IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THE ESTATE OF MARQUEZ SMART ) <br> BY RANDALL SMART & BRENDA BRYANT ) <br> AS ADMINSTRATORS OF THE ESTATE OF ) <br> MARQUEZ SMART, AND RANDALL SMART ) <br> AND BRENDA BRYANT, AS HEIRS OF ) <br> MARQUEZ SMART, DECEASED ) <br> ) <br>      Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF WICHITA, THE WICHITA ) <br> POLICE DEAPRTMENT AND OFFICERS ) <br> LEE FROESE & AARON CHAFFEE IN THEIR ) <br> INDIVIDUAL & OFFICAL CAPACITY ) <br> ) <br>      Defendants. ) | Case No.  2:14-CV-02111 |

**FIRST AMENDED COMPLAINT**

**I. JURISDICTION**

Jurisdiction in this case is based on 28 U.S.C. §§ 1331, 1343(3), 1367, 42 U.S.C. § 1983 and 1988.

**II. PARTIES**

1.   Marquez Smart was a resident of the City of Wichita, State of Kansas at the time of his death.

2.   Officer Chaffee had been assigned to the City of Wichita Gang Intelligence Unit in December 2009.

3.   Randall Smart is a resident of the City of Wichita, State of Kansas.

4.   Brenda Bryant is a resident of the City of Wichita, State of Kansas.

5.   Randall Smart and Brenda Bryant are the duly authorized administrators of the Estate of Marquez Smart.

6.     The City of Wichita is a municipality, which is not a political subdivision of the State of Kansas. At all time it acted through its agents and employees, including but not limited to the Wichita Police Department, Officer Lee Froese and Officer Aaron Chaffee.

7.     The Wichita Police Department, along with its officers in their official and individual capacity, may be served with process by serving them at the Wichita Police Department at 455 North Main, Wichita, Kansas 67202. At all time it acted through its agents and employees, including but not limited to Officer Lee Froese and Officer Aaron Chaffee.

8.     Officer Lee Froese, #2361, upon information and belief, is a resident of the City of Wichita, State of Kansas. At all times he was acting in the course and scope of his employment with the City of Wichita and the Wichita Police Department.

9.     Officer Aaron Chaffee, #2193, upon information and belief, is a resident of the City of Wichita, State of Kansas. At all times he was acting in the course and scope of his employment with the City of Wichita and the Wichita Police Department.

### III. FACTUAL CONTENTIONS

10.    All statements of fact refer to March 10, 2012.

11.    Marquez Smart spent the entire day with his cousin. At no time during the day did his cousin see that Marquez Smart had a weapon of any type.

12.    Marquez Smart bought a yellow shirt to wear.

13.    That evening, several clubs in addition to Doc Howards in the Old Town district in Wichita were having concerts.

14.    Pleasure P was expected to draw a large crowd of young people.

15.    Anyone who went to the concert at Doc Howards had to submit to search by the club to make sure they had no weapons on them.

16.    Marquez Smart and his cousin went to the concert at Doc Howards, and were

admitted into the club after submitting to the search for weapons.

17. The police report they were especially concerned about the possibility of gang-related violence. Therefore, officers were paying particular attention to any known gang members and their associates.

18. Police had significant uniform and undercover officer presence to help manage the crowd at closing time.

19. Officer Chaffee arrived at Mosley between 12:00 a.m. and 12:30 a.m.

20. Several minor disturbances had already occurred, but had been resolved, that evening, mostly having to do with crowd control and congestion.

21. The concert let out of Doc Howards at 1:45 a.m.

22. There were about 400-500 people in the entire immediate district attending the various concerts, and an estimated 100-200 in the immediate vicinity of the Old Town Hotel parking garage.

23. There are two entrances to the hotel parking garage on the east side, one at the northeast corner (which also has an exit) and the other on the southeast corner.

24. Officer Froese's car was parked in the northeast entrance to the parking garage, blocking any traffic into the garage at that point.

25. Directly to the north and west of where Officer Froese parked his car, there are large, window-like openings in the wall of the parking garage.

26. Below those openings runs an alleyway used as a walkway between the garage and the building just north of the garage that at the time was used as a nightclub called "Liquid".

27. Officers were moving the crowd southward on Mosely, a north and south street, toward the Third Street intersection.

28. On the east side of Mosley Street across from the parking garage, there is an elevated

walking platform upon which Officer Chaffee stood watching the crowd.

29. Patrol car 21 was parked, facing south on the east side of Mosely, across the street, east of the parking garage and a sculpture about 30 feet south of the northeast hotel garage entrance and exit.

30. Officer Froese was facing southwest, standing near patrol car 21 with other officers watching the crowd.

### The Shooter/Officer Froese

31. Suddenly, there was a short scuffle, a yell, and a shot fired in the crowd north of the sculpture.

32. Officers Froese saw a black male with a yellow shirt holding a handgun with his right hand, and, with his arm extended, he fired again.

33. When the shooter started firing, someone called out, "It's the guy in the yellow!"

34. The large crowd in the immediate vicinity started scattering in all directions.

35. The shooter then ran through the panicked crowd, north on the west side of Mosley toward the parking garage, fumbling with his handgun.

36. A loaded magazine to a .45 caliber handgun was later discovered lying on the sidewalk north of the sculpture. There was a cartridge incorrectly loaded backwards in the magazine.

37. Froese gave chase, running northwesterly across Mosely after the shooter, firing repeatedly as the man in the yellow shirt ran through the crowd toward Froese's parked patrol car.

38. The individual in the yellow shirt ran into the garage entrance behind Froese's parked patrol car that was parked facing eastward on the entrance ramp.

### The Yellow Shirt/Officer Chaffee

4

39. When Officer Chaffee saw the shooter firing and Froese firing, he didn't have a perfect view, but could follow what happened because of the yellow shirt.

40. Officer Chaffee hurriedly turned to make his way off of the elevated walkway to get to the street level and visual contact of the individual in a yellow shirt he believed to be the shooter.

### Marquez Smart

41. Shortly before the shooting, Marquez Smart and his cousin were walking south, talking with friends on the sidewalk east of the parking garage and near the sculpture on the west side of Mosley.

42. Suddenly, Marquez Smart was knocked down from behind and fell into his cousin. The force of the blow was so hard that Marquez dropped and broke his glasses.

43. The two cousins fell together to the sidewalk as a shot was fired close to them.

44. Marquez Smart and his cousin began running as quickly as they could get to their feet, both northward toward the parking garage northeast entrance and exit and the alleyway.

45. Marquez's cousin ran behind Froese's patrol car into the parking garage and exited on the west side, losing sight and contact with Marquez.

46. Marquez ran in front of Froese's parked patrol car, sitting in the parking garage northeast entrance, and in the alleyway.

### The Alleyway

47. After Chaffee reached the street level, he regained sight of a yellow shirt worn by a man running into the alleyway.

48. Officer Chaffee maintained, however, that even though he had turned his back, he could see "that yellow shirt moving through the crowd."

49. Officer Chaffee has stated he did give commands for the man to stop and drop the

5

gun.

50.     Officer Froese didn't know if any other officers gave commands to stop and drop the gun.

51.     Officer Chaffee stated that he was pleased with how well his mind was working because he knew he could fire at the individual and not risk hitting anyone else.

52.     A witness has stated that Officer Chaffee fired, and the man in a yellow shirt fell face down, his arms outstretched and his head nodding, as if in complete surrender.

53.     Chaffee states that he will never forget the sound of a gun hitting the pavement when it fell.

54.     Officer reports indicate that there was a gun found in the alleyway, a substantial distance from the man who was shot.

55.     The location of the gun found in the alleyway is directly below the large openings in the wall behind Froese's parked patrol car.

56.     A witness who was near Officer Chaffee states that there was no handgun in or near the hands of the wounded man Chaffee had shot.

57.     The witness further states that he observed Officer Chaffee fire his handgun "2-3" times into the back of the wounded man in the alleyway, despite the man being completely submissive.

58.     The witness states that the distance from Chaffee to the man he killed when he fired his handgun was approximately from five to seven feet.

59.     When the witness questioned Officer Chaffee's actions in shooting the man, the witness and another person who had been standing nearby were told by Officer Chaffee, in a profane manner, to leave the area.

60.     The two witnesses complied with the order and were never interviewed or contacted

6

by anyone from the Wichita Police Department in the investigation following the event.

61.    An ambulance was summoned to the scene and arrived at 2:06 a.m.

62.    An autopsy was performed. Marquez Smart had suffered five bullet wounds, three of which were back to front, with trajectory indicating that the body was prone when the bullets entered.

63.    Of the three shots, which indicated an upward, back to front trajectory, two bullets exited the body; one did not.

64.    When emergency medical technicians at the scene moved the body of Marquez Smart, 2 spent bullets fell out of his clothing, having struck the pavement upon exit.

65.    Marquez Smart was pronounced dead at 2:32 a.m., March 11, 2012.

66.    The report indicated cause of death as homicide by law enforcement gunshot wounds.

67.    Following the pronouncement of death, officers bagged the hand of Marquez Smart.

68.    Included in the wounded that night was an individual who claimed to be an "innocent bystander" who had been shot in the lower leg as he sought refuge in the hotel parking garage.

69.    The "innocent bystander" took cover in the garage adjacent to the large openings to the alleyway below.

70.     The "innocent bystander" was wearing a yellow shirt.

71.    There was no gunshot residue test performed on Marquez Smart's hand although they had been bagged for the purpose of performing such a test. Such a test would have conclusively proven whether his hands were in the presence of a firearm being discharged or not.

72.    A check in the SPIDER database, which listed all known gang members, revealed

that Marquez Smart was not a gang member and did not have any gang affiliations.

## IV. VENUE

73. Plaintiff incorporates paragraphs 1 through 72 as if set forth fully herein.

74. Plaintiff Randall Smart is domiciled in Kansas.

75. Plaintiff Brenda Bryant is domiciled in Kansas.

76. The Wichita Police Department is domiciled at Kansas.

77. The transaction or occurrence which gave rise to the Plaintiffs' harm occurred in Kansas.

78. Therefore, venue is appropriate in the District of Kansas.

## V. COMPLIANCE WITH CONDITIONS PRECEDENT

79. Plaintiffs incorporate all preceding paragraphs by reference, as if set forth fully here.

80. Plaintiff complied with the condition precedent regarding the City of Wichita, Wichita Police Department and its officers by providing notice of the claim on March 6, 2014, as required by K.S.A. § 12-105b before claims implicating the Kansas Tort Claims Act can be brought.

81. When either the 4 month (120 day) period lapses, which counts as a constructive denial of the claim, or the City of Wichita denies the claims, Plaintiffs would have 30 days to file suit since the statute of limitations is tolled during the 4 month period.

82. At the conclusion of that period or when the state claims are denied, whichever is sooner, Plaintiffs will amend this Complaint to include pendant state claims under 28 U.S.C. § 1367.

## VI. CAUSES OF ACTION

83. Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

    A. FEDERAL CAUSES OF ACTION

8

**COUNT 1**:   UNREASONABLE SEIZURE – KILLING OF MARQUEZ SMART BY OFFICERS LEE FROESE AND AARON CHAFFEE

84. Plaintiff incorporates all preceding paragraphs as if set fort fully herein.

85. The Fourth and Fourteenth Amendments to the United State Constitution and Section 15 of the Kansas Bill of Rights prohibits the seizure of any person without a warrant unless that person has committed an inherently dangerous felony or a misdemeanor in the presence of an officer.

86. Moreover, the Fourth and Fourteenth Amendments to the United State Constitution and Section 15 of the Kansas Bill of Rights expressly forbids the killing of any person by a police officer except in the following circumstances:

   1. A suspect who has or is committing an inherently dangerous felony.

   2. A person engaged in flight from an inherently dangerous felony.

   3. A person who threatens the life of a law enforcement officer or any person nearby with death or serious bodily injury.

87. The Defendants acted unconstitutionally when they killed Marquez Smart since none of the exceptional circumstances existed at the time he was shot by Officer Chaffee.

88. The Defendants unconstitutional conduct resulted in the following damages suffered by Decedent and Plaintiffs:

   1. Decedent suffered conscious pain and suffering and death;

   2. Plaintiff's suffered the loss of their child and all damages recoverable for such wrongful death, including but not limited to…

WHEREFORE, the Estate Marquez Smart, by and through Randall Smart and Brenda Bryant, as Administrators of the Estate of Marquez Smart, demands judgment

against Officer Lee Froese and Officer Aaron Chaffee, jointly and severally, for compensatory damages in an amount in excess of $75,000 plus the costs of action and such other relief as the Court deems just and equitable.

**COUNT 2**: UNREASONABLE SEIZURE – USE OF EXCESSIVE FORCE – SHOOTING OF MARQUEZ SMART BY OFFICER CHAFFEE

89. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

90. The Fourth and Fourteenth Amendments to the United States Constitution and Section 15 of the Kansas Bill of Rights prohibits the use of the force than is reasonable by a law enforcement officer to carry out his assigned duties.

91. At the time of the shooting, Marquez Smart was laying on the ground, covered by Officer Chaffee's gun, did not have a weapon, and could not get to the gun that was at least 10 feet away when Officer Chaffee put 3 bullets in his back and used excessive force on Marquez Smart.

92. The shooting by Defendant Chaffee was unjustified by any actions of Marquez Smart, and constituted an unreasonable and excessive use of deadly force.

93. The shooting deprived Marquez Smart of the following rights under the Fourth and Fourteenth Amendments to the United States Constitution and Section 15 of the Kansas Bill of Rights.

    a. Freedom from the use of unreasonable and excessive force.

    b. Freedom from the deprivation of liberty without due process of law.

    c. Freedom from summary punishment.

WHEREFORE, the Estate of Marquez Smart, by and through Randall Smart and Brenda Bryant as Administrators of the Estate of Marquez Smart, demands judgment against Officer Lee Froese and Officer Aaron Chaffee, jointly and severally, for compensatory damages in excess of $75,000, plus the costs of action and such other relief Court deems just and equitable.

**COUNT 3**:   INSTITUTIONAL DEFENDANTS – FAILURE TO ESTABLISH CONSTITUTIONAL POLICY, CUSTOM OR ACTION

94.   Defendants City of Wichita and Wichita Police Department were responsible to and did, in fact, establish official policy, custom and/or action regarding permissible circumstances in which officers may use deadly force on suspects. The official policy, custom and/or action was insufficient to establish circumstances in which it would be constitutionally permissible to use deadly force, in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

95.   Officers Froese and Chaffee were acting pursuant to such official policy, custom and/or action at all times pertinent herein. As a direct and proximate result of such official policy, custom and/or action, Marquez Smart was shot and killed.

96.   Further, defendants City of Wichita and Wichita Police Department failed to take any corrective action to remedy the constitutional violations discussed above. This corrective inaction constitutes deliberate indifference to and/or tacit authorization of these constitutional violations.

WHEREFORE, the Estate of Marquez Smart, by and through Randall Smart and Brenda Bryant as Administrators of the Estate of Marquez Smart, demands judgment against Officer Lee Froese and Officer Aaron Chaffee, jointly and severally, for compensatory

damages in excess of $75,000, plus the costs of action and such other relief Court deems just and equitable.

97. Plaintiffs are entitled to their attorney fees and costs incurred in prosecuting the claims stated above pursuant to 42 U.S.C. § 1988.

B. PENDENT STATE CLAIMS UNDER 28 U.S.C. § 1367

98. Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

**COUNT 1**: NEGLIGENT USE OF FORCE BY OFFICERS FROESE AND CHAFFEE

99. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

100. The Officers were negligent by opening fire into a crowd, firing at Marquez Smart based on the fact that he had a yellow shirt alone, chasing Marquez Smart with firearms into an alley, opening fire without assessing the situation, and shooting him execution style when he was lying on the ground.

101. Defendants City of Wichita and Wichita Police Department are vicariously liable under respondeat superior for the actions and inactions of the officers described above.

WHEREFORE, the Estate of Marquez Smart, by and through Randall Smart and Brenda Bryant as Administrators of the Estate of Marquez Smart, demands judgment against defendants, jointly and severally, for compensatory damages in excess of $75,000 plus the costs of action and such other relief Court deems just and equitable.

**COUNT 2**: WRONGFUL DEATH/Survivor Action

102. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

103. The shooting of Marquez Smart, as enumerated above was not justified or excused under the laws of either the United States of the State of Kansas. Therefore, the death was wrongful.

104. From the time of the shooting until he died, Marquez Smart suffered great pain and suffering.

105. The shooting was the direct and proximate cause of Marquez Smart's pain and suffering and death.

106. Defendants City of Wichita and Wichita Police Department are vicariously liable under respondeat superior for the actions and inactions of the officers described above.

107. The Estate of Marquez Smart and Plaintiffs Randall Smart and Brenda Bryant in their own right have suffered the following damages as a result of Defendants actions:

    a. Reasonable hospital, funeral, and burial expenses;

    b. Conscious pain and suffering, physical, and emotional;

    c. Loss of Decedent's financial support/earning capacity;

    d. Loss of Decedent's services;

    e. Loss of Decedent's gifs and other valuable gratuities;

    f. Loss of Decedent's comfort, society, and companionship;

    g. Compensatory and non-pecuniary damages allowed under federal law;

    h. Premature and untimely death of Plaintiffs Decedent, which could have been avoided had he not been wrongly and unjustifiably shot by Officer Chaffee after the circumstances which led up to the shooting;

    i. Other damages as will be learned through discovery.

WHEREFORE, the Estate of Marquez Smart, by and through Randall Smart and Brenda Bryant, demands judgment against defendants, jointly and severally, for compensatory damages in the amount in excess of $75,000, plus the costs of action and such other relief as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiffs invoke their right to a trial by a jury by their peers.

*Respectfully submitted by,*

**PROTZMAN LAW FIRM, LLC**

/s/Andrew B. Protzman
Andrew B. Protzman, KS No. 18015
1100 Main Street; Suite 2550
Kansas City, Missouri 64105
Tel:    (816) 421-5100
Fax:    (816) 421-5105
andy@protzmanlaw.com

*And*

**KUHLMAN & LUCAS, LLC**

/s/ Bradley D. Kuhlman
Bradley D. Kuhlman, KSD Bar No. 7844
1100 Main Street, Suite 2550
Kansas City, Missouri 64105
Tel:    (816) 799-0330
Fax:    (816) 799-0336
brad@kuhlmanlucas.com

*Attorneys for Plaintiffs*