IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THE ESTATE OF MARQUEZ SMART, et al., )
)
            Plaintiffs, )
)
v. )   Case No. 14-2111-JPO
)
THE CITY OF WICHITA, et al., )
)
            Defendants. )

**ORDER**

Plaintiffs filed this excessive-force suit against the City of Wichita ("the City") and Wichita police officers Lee Froese and Aaron Chaffee, relating to the fatal police shooting of Marquez Smart. In an order dated August 7, 2018, the court granted summary judgment for defendants on qualified immunity grounds.[1] Pursuant to Fed. R. Civ. P. 59(e), plaintiffs have filed a motion for reconsideration of the summary judgment (ECF No. 207). Because the court finds no clear error in, or manifest injustice arising from, its summary-judgment decision, the motion is denied.

**I.    Background**

In the early morning hours of March 10, 2012, gunshots rang through the streets of a crowded entertainment district in Wichita, Kansas. Believing Smart was the shooter,

---

[1] ECF No. 205.

Officers Froese and Chaffee quickly pursued and fatally shot him. Plaintiffs' complaint alleged the shooting amounted to excessive force.

In their motion for summary judgment, Officers Froese and Chaffee asserted the defense of qualified immunity. This assertion raised the presumption the officers were immune from suit,[2] and shifted the burden to plaintiffs "to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."[3] Applying this standard, the court found that when disputed facts were viewed in the light most favorable to plaintiffs, Officers Froese and Chaffee violated Smart's Fourth Amendment rights because their use of deadly force in seizing Smart was not objectively reasonable.[4] But under the second prong of the analysis, the court determined plaintiffs failed to demonstrate the actions of the officers violated a right that was "clearly established" at the time of the shooting.[5] Plaintiffs seek reconsideration of the court's decision on the second prong.

---

[2] *Perea v. Baca,* 817 F.3d 1198, 1202 (10th Cir. 2016) ("Appellants' assertion of qualified immunity creates a presumption that they are immune from suit.").

[3] *Pauly v. White*, 874 F.3d 1197, 1214 (10th Cir. 2017) (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009)).

[4] ECF No. 205 at 29-43.

[5] *Id.* at 43-50. The court undertook the first-prong analysis, even though under *Pearson v. Callahan,* 555 U.S. 223, 236 (2009) it was permitted to jump to the "clearly established" second prong without determining whether a constitutional violation occurred, because the court shares the concern expressed by many scholars that the recent tendency of courts to skip to the second prong has "all but halted the development of new precedents to rely on in the future." Brief for Scholars of the Law of Qualified Immunity as Amici Curiae Supporting Petitioner at 4, *Almighty Supreme Born Allah v. Milling*, No. 17-8654

## II. Legal Standards on Reconsideration

A motion to alter or amend judgment pursuant to Rule 59(e) may be granted only if the moving party can establish: (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice.[6] Plaintiffs do not argue a change in controlling law and do not attempt to present new evidence, so the court considers their motion as arguing clear error or manifest injustice.

---

(S. Ct. July 2018), 2018 WL 3388318, at *4. *See also, e.g.*, Joanna C. Schwartz, *The Case Against Qualified Immunity*, 93 Notre Dame L. Rev. 1797, 1817-18 (2018) (noting the paradox that results from "simultaneously allowing courts to decide qualified immunity motions without reaching the underlying constitutional questions and requiring plaintiffs to produce circuit or Supreme Court opinions finding constitutional violations in cases with nearly identical facts"); Karen M. Blum, *Qualified Immunity: Time to Change the Message*, 93 Notre Dame L. Rev. 1885, 1897 (2018) ("The exercise of *Pearson* discretion in favor of not deciding often leaves important, recurring, and non-fact-bound constitutional questions needlessly floundering in the lower courts."); *Id*. at 1902-03 ("[T]here is some satisfaction for plaintiffs when a court acknowledges the Constitution has been violated and some hope that a 'holding' on these particular facts will serve to remove similar conduct from the realm of 'bad guesses in gray areas' which typically results in a grant of qualified immunity."); ECF No. 205 at 10 n.26 ("In the interest of further defining Fourth Amendment rights, the court undertakes the first prong of the immunity analysis, even though the court could grant Officers Froese and Chaffee's request for immunity based solely on plaintiffs' failure to satisfy the second prong.").

[6] *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995).

Plaintiffs assert the "Court has misapprehended the facts, improperly viewed the facts in favor of Defendants and failed to draw all inferences in Smart's favor."[7] To be sure, reconsideration is appropriate when the court has misapprehended the facts, the controlling law, or a party's position.[8] However, a motion to reconsider is not a tool for a losing party to rehash arguments previously addressed or to present arguments, legal theories, or facts that could have been raised earlier.[9]

### III. Analysis

As discussed in the court's order granting summary judgment, the Supreme Court has made it clear that to demonstrate a proposition of law was "clearly established" under the second prong of the qualified-immunity analysis, a plaintiff must, in all but the "rare obvious case,"[10] point to precedent that "'squarely governs' the specific facts at issue."[11] Where a past case is not directly on point, "existing precedent must have placed the

---

[7] ECF No. 207 at 5.

[8] *First State Bank v. Daniel & Assocs., P.C.*, 491 F. Supp. 2d 1033, 1035 (D. Kan. 2007).

[9] *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014); *Servants*, 204 F.3d at 1012. *See also United States v. Castillo–Garcia*, 117 F.3d 1179, 1197 (10th Cir. 1997) (overruled on other grounds) ("[A]rguments raised for the first time in a motion for reconsideration are not properly before the court and generally need not be addressed."); *Robertson v. Biby*, No. 12-3109-SAC, 2013 WL 3935250, at *1 (D. Kan. July 30, 2013) (ruling that a Rule 59(e) motion does not "offer a second bite at the proverbial apple").

[10] *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018).

[11] *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

4

statutory or constitutional question *beyond debate*."[12] Plaintiffs acknowledge "the absence of a case directly on point," but as they did in their memorandum opposing summary judgment, "urge this Court to apply the general principle" that an officer may not use deadly force against "'an unarmed, nondangerous suspect.'"[13]

The court previously noted the very high burden plaintiffs face in relying on this "general principle" argument. The Supreme Court has ruled that excessive-force principles set forth at the "general level" may not be relied upon as creating clearly established law "outside 'an obvious case.'"[14] Thus, although general excessive-force principles were "absolutely relevant in determining [the officers] acted unreasonably" under prong one of the qualified-immunity analysis, these general principles "cannot alone serve as a basis for

---

[12] *Kisela*, 138 S. Ct. at 1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)) (emphasis added). *See also Leiser v. Moore*, No. 17-3206, 2018 WL 4224663, at *2 (10th Cir. Sept. 6, 2018) (quoting this same language and emphasizing the phrase "beyond debate").

[13] ECF No. 207 at 20 (quoting from *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

[14] *White*, 137 S. Ct. at 552 (quoting *Brosseau v. Haugen,* 543 U.S. 194, 199 (2004)); *Kisela*, 138 S. Ct. at 1153 (quoting *White*, 137 S. Ct. at 552). *See also Mullenix*, 136 S. Ct. at 309 ("The general principle that deadly force requires a sufficient threat hardly settles this matter [of whether the officer acted reasonably]."); *Malone v. Bd. of Cty. Comm'rs*, 707 F. App'x 552, 556 (10th Cir. 2017) (recognizing that "in *Mullenix*, an excessive-force case, the Supreme Court rejected as too general the 'rule that a police officer may not use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others'").

5

concluding that an officer's particular use of force was 'clearly established'" under prong two of the analysis.[15]

In seeking reconsideration, plaintiffs argue that the facts, as determined by the court for summary judgment purposes (i.e., with all inferences drawn in plaintiffs' favor) under prong one, make this case one of the rare "obvious cases" in which every reasonable officer in Officer Froese and Chaffee's shoes would have known his or her actions were unconstitutional beyond debate under prong two. Specifically, plaintiffs argue it would have been obvious to a reasonable officer, acting under the circumstances of the night in question, that shooting at Smart, especially without first identifying oneself, would be excessive where (after-the-fact and for summary-judgment purposes) the court determined the initial shots fired did not come from Smart's immediate area; and where Smart did not commit a crime, did not have a gun, did not fire a gun, did not threaten police or resist arrest, and then fell to the ground.

---

[15] *Pauly*, 874 F.3d at 1223. *See also Casey v. City of Fed. Heights,* 509 F.3d 1278, 1284 (10th Cir. 2007) ("[T]he Supreme Court has held that [a] "general proposition ... is not enough" to turn all uses of excessive force into violations of clearly established law. In other words, the fact that it is clear that any unreasonable use of force is unconstitutional does not mean that it is always clear which uses of force are unreasonable." (internal citation omitted)).

Thus, the court rejects plaintiffs' implicit argument that because (A) under prong one, the court found Officers Chaffee and Froese did not act as a reasonable, objective officer would have acted, then (B) it necessarily follows that every reasonable, objective officer would have known the officers' conduct was unconstitutional under prong two.

6

The flaw in plaintiffs' argument is that it leaves out other factors the court weighed in considering whether plaintiffs had met their burden of establishing this as the rare, obvious case that need not be governed by existing precedent. Specifically, the court also considered that Officers Froese and Chaffee were in an active-shooter situation in which multiple gunshots were heard, shots were fired on a public street where a large crowd was present and at risk, the officers perceived a person running with a gun, the person was running in the opposite direction as the bulk of the crowd, and the officers were making split-second decisions based on their perceptions formed in an undisputedly chaotic, rapidly evolving situation.[16] The court was mindful of the Supreme Court's directive that "because 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation,' the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective."[17] When the court considered *all* the facts known to officers *at the time*, the court simply could not conclude that Officers Chaffee and Froese's judgment was obviously egregious (even if

---

[16] Given these circumstances, the court rejects plaintiffs' characterization that defendants' conduct presented a "run-of-the-mill constitutional violation." ECF No. 207 at 19.

[17] *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259–60 (10th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001) and *Graham v. Connor*, 490 U.S. 386, 397 (1989)); *see also McCoy v. Meyers*, 887 F.3d 1034, 1045 (10th Cir. 2018) (quoting the same language from *Graham*).
7

mistaken).[18] Moreover, the unique factual situation placed this case outside the realm of caselaw that had been decided at the time (as well as at this time).[19]

Plaintiffs take specific issue with the court's consideration that Smart ran north after gun shots were heard, while most of the crowd ran south. As noted above, the court concluded this was *one* factor a reasonable officer might have viewed as indicating Smart was the shooter and not a member of the crowd fleeing the shooter. Plaintiffs first state that people other than Smart also ran north. While this is true, it does not refute the uncontroverted fact that that *the bulk* of the crowd ran south. Second, plaintiffs note that neither Officer Chaffee nor Officer Froese testified that the direction Smart ran played a role in their determination that Smart was an active shooter. The motivations of the individual defendants, however, are not relevant to the qualified-immunity analysis, which

---

[18] *See City and Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *al–Kidd*, 563 U.S. at 743) (ruling the "exacting standard" "'gives government officials breathing room to make reasonable but mistaken judgments'").

Plaintiffs may be correct in their argument that "Smart had the right not to be shot in the back at close range or while lying on the ground because he was unarmed, had committed no crime, made no apparent moves to attack an officer or bystander and posed no threat to the officers or others," ECF No. 207 at 20, but this is not the test under the "clearly established" prong of the qualified-immunity analysis.

[19] In their brief in support of reconsideration, plaintiffs discuss a number of cases for the first time, arguing they dictate the denial of qualified immunity to defendants. *See* ECF No. 207 at 20-22. The court finds this an inappropriate attempt to present legal arguments that could have been raised earlier. *See supra* note 9 and accompanying text. In any event, none of the cited cases involved an active-shooter situation in a large public gathering.

8

O:\ORDERS\14-2111-JPO-207.docx

examines the actions from the perspective of a reasonable officer on the scene.[20]  Thus, plaintiffs' new arguments do not change the court's decision.

The court denies plaintiffs' motion to reconsider as the court has not misapprehended the facts, plaintiffs' position, or controlling law.  The court continues to find defendants are entitled to qualified immunity because clearly established federal law existing at the time would not "have made it clear to every reasonable officer"[21] in an active-shooter situation involving chaos and a large crowd, and where a man is seen running with a gun, that firing at a man running in the opposite direction of the bulk of the crowd and perceived to be carrying a gun (even if that perception was mistaken) violated the Fourth Amendment.

IT IS THEREFORE ORDERED that plaintiffs' motion to reconsider is denied.

Dated October 19, 2018, at Kansas City, Kansas.

s/ James P. O'Hara<br>
James P. O'Hara<br>
U.S. Magistrate Judge

---

[20] *See Kisela*, 138 S. Ct. 1152-53.

[21] *McCoy*, 887 F.3d at 1048.