IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THE ESTATE OF MARQUEZ SMART, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 14-2111-JPO |
| | ) | |
| THE CITY OF WICHITA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This case arises from the fatal shooting of Marquez Smart by police officers in Wichita, Kansas. In anticipation of trial, defendants have filed a motion asking the court to exclude from evidence the opinions of Michael L. Woodhouse and Anthony Cornetto, as well as the supplemental opinion of Dr. Wayne Ross, all of which plaintiffs designated as rebuttal-expert testimony (ECF No. 187). Defendants contend the opinions, though perhaps proper had they been offered to support plaintiffs' case in chief, do not attempt to rebut the opinions proffered by defendants' experts. For the reasons discussed below, the motion is granted in part and denied in part.

**I.   Background**

It is undisputed that on March 10, 2012, Marquez Smart was pursued on foot by Wichita police officers and shot multiple times by officers Lee Froese and Aaron Chaffee.

1

Plaintiffs retained Wayne Ross, M.D., a forensic pathologist and medical examiner, to provide an expert opinion on, among other things, the trajectory paths of the bullets that penetrated Smart's body and clothing. Ross produced an expert report on January 27, 2017, in which he discussed his laboratory reconstruction of bullet paths by placing the clothing Smart had been wearing on a mannequin, analyzing holes in the clothing, and marking bullet entrance and exit wounds as noted on the autopsy report.[1] During his subsequent deposition, Ross described his placement of rods in the mannequin to reflect his opinions on trajectory paths and his conclusion that Smart was "on the ground for all of the shots."[2]

Defendants retained Kris Sperry, M.D., a forensic pathologist, as an expert to critique Ross's opinions and to reach his own opinions. Sperry issued a report on June 13, 2017, opining in part that Ross's mannequin reconstruction was "patently misleading and grossly inaccurate" because "the height of the mannequin was not the same height as Mr. Smart," the "mannequin is excessively thin and elongated," and the mannequin is not "anatomically" the same as Smart.[3] According to Sperry, these differences caused the

---

[1] ECF No. 187-6 at 3-4.

[2] ECF No. 195-1 at 5. Between the time of his report and deposition, Ross performed the reconstruction on a second mannequin, and generally testified about his conclusions based on the second mannequin reconstruction, which he stated was consistent with his report.

[3] ECF No. 195-2 at 6; *see also id.* at 8 ("The mannequin 'reconstruction' carried out by Dr. Ross shortly prior to his deposition is grossly inaccurate and misleading, due to the fact that the mannequin is not physically identical to a normal human being, and the misleading anatomic locations of the 'entrance wounds' on the mannequin as compared with the actual locations on Mr. Smart's body.").

2

angles created by Ross's placement of rods through the mannequin to be "more acutely exaggerated and acutely upwardly angulated."[4]

Sperry was deposed on September 6, 2017. When asked why he did not perform a mannequin reconstruction in this case, Sperry testified mannequin reconstructions are difficult to perform because an accurate reconstruction would require an "anatomically identical mannequin that reflects the . . . height and the actual dimensions of the deceased person," and because "body positions change" when the subject is "running and moving."[5] When asked specifically about the structure of the mannequin used by Ross, Sperry noted "the anatomy is wrong of the mannequin as compared with Mr. Smart"[6] because "the physical structure of the mannequin is not that of a normal human."[7] Sperry opined the differing structures caused the angles of the rods Ross placed through the mannequin to be inaccurately "sharper"[8]—that the angle would "become more horizontal" if the mannequin were thicker.[9]

Sperry was also asked during the deposition to opine about Smart's body position at the time he sustained gunshot wounds. Sperry stated that the "upward trajectory through

---

[4] *Id.* at 6-7.

[5] ECF No. 195-4 at 3-4.

[6] *Id.* at 11.

[7] *Id.* at 12.

[8] *Id.* at 13.

[9] *Id.* at 14.

the body . . . [was] typical of someone say who is running or who is a little bit crouched over whether they are running or not. In other words, he was not standing straight up."[10] Sperry conceded, "with the person upright or with the mannequin upright" Ross's "attempted reconstruction of the bullet path of gunshot wound 5 . . . [was] reasonably accurate."[11]

Defendants also disclosed Lucien Haag, a forensic consultant, as an expert. Mr. Haag issued a report opining, in relevant part, that the lack of powder residue on Smart's shirt was evidence that Smart was not prone on the ground when shot.

On September 28, 2017, plaintiffs disclosed Michael L. Woodhouse and Anthony Cornetto as rebuttal witness ostensibly to "repel" Sperry's testimony critical of Ross's mannequin reconstruction of bullet trajectories, and plaintiffs disclosed Ross as a rebuttal witness to refute Sperry's criticism of his mannequin model and Haag's conclusion based on Smart's shirt.[12] Defendants filed the instant motion to exclude the three as rebuttal experts, arguing their testimony is not proper rebuttal testimony.

## II. Legal Standards

Fed. R. Civ. P. 26(a)(2) governs expert-testimony disclosure. It requires the disclosure of each witness whom a party intends to "use at trial to present evidence under

---

[10] *Id.* at 6-7.

[11] *Id.* at 12-13.

[12] ECF No. 150.

4

Federal Rule of Evidence 702, 703, or 705."[13] When the witness has been retained to provide such testimony, the witness's disclosure must be accompanied by a written report that includes a complete statement of his or her opinions.[14] The opposing party then has an opportunity to disclose rebuttal experts accompanied by rebuttal-expert reports.[15] Rule 26(a)(2)(D)(ii) defines rebuttal-expert testimony as evidence "intended solely to contradict or rebut evidence on the same subject matter identified" in another expert's report.[16]

Because the "Federal Rules of Civil Procedure set out specific procedures for the disclosure of rebuttal witnesses . . . 'courts will disallow the use of a rebuttal expert to introduce evidence *more properly* a part of a party's case-in-chief,' especially if the alleged rebuttal expert is used to introduce new legal theories."[17] "The plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief."[18] "When plaintiffs . . . seek to rebut defense theories which they knew about or

---

[13] Fed. R. Civ. P. 26(a)(2)(A).

[14] Rule 26(a)(2)(B).

[15] Fed. R. Civ. P. 26(a)(2)(D).

[16] Fed. R. Civ. P. 26(a)(2)(D)(ii), *see also Stephenson v. Wyeth LLC*, No. 04-2312-CM, 2011 WL 4900039, at *1 (D. Kan. Oct. 14, 2011).

[17] *Hammers v. Douglas Cnty.*, No. 15-7994-CM, 2016 WL 6804905, at *1 (D. Kan. Nov. 16, 2016) (emphasis added) (quoting *Stephenson*, 2011 WL 4900039, at *1).

[18] *Stephenson*, 2011 WL 4900039, at *1 (quoting *Braun v. Lorillard, Inc.,* 84 F.3d 230, 237 (7th Cir. 1996)).

reasonably could have anticipated, the district court is within its discretion in disallowing rebuttal testimony."[19]

Under Fed. R. Civ. P. 37(c)(1), a party is precluded from using witness testimony not timely disclosed unless the failure to disclose was substantially justified or is harmless.[20] The decision to exclude expert testimony designated in rebuttal lies within the discretion of the district court.[21]

### III.   Application

Defendants ask the court to exclude the expert opinions of Woodhouse, Cornetto, and Ross that were expressed in "rebuttal" reports.  Plaintiffs respond that their designated rebuttal experts properly offered opinions that refuted opinions stated by Sperry and Haag. The court will address each challenged rebuttal expert in turn.

<u>Woodhouse</u>

Plaintiffs assert they designated Woodhouse, a biomechanics expert, to rebut Sperry's "new" and "unsupported theory that [Smart] was running in a crouched position

---

[19] *Koch v. Koch Indus., Inc*., 203 F.3d 1202, 1224 (10th Cir. 2000); *see also Pandit v. Am. Honda Motor Co.*, 82 F.3d 376, 383 (10th Cir. 1996) (affirming exclusion of rebuttal evidence that was available to plaintiff during her case-in-chief and not unexpected).

[20] Plaintiffs make no argument that any untimely designation of experts was substantially justified or harmless.

[21] *Newman v. State Farm Fire & Cas. Co*., 290 F. App'x 106, 115 (10th Cir. 2008).

when he was shot by . . . officers Froese and Chaffee."[22]  There are two problems with plaintiffs' argument: first, defendants' "crouched running" theory was not new, and second, Woodhouse did not address any theory espoused by Sperry.

It is disingenuous for plaintiffs to suggest Woodhouse offered his expert opinion on whether Smart was crouched when shot in response to a "new" theory raised by Sperry. The assertion that Smart was running in a crouched position was raised clearly by Officer Froese (a defendant at the time) during his April 14, 2016 deposition.[23]  Froese testified that when he fired his second series of four shots, Smart was "[r]unning, head forward, crouched down – or bent over" and was bent at the waist "[m]aybe even more than" 45 degrees.[24]  In response to a number of follow-up questions by plaintiffs' counsel, Froese testified that although it is typical for people to begin running by leaning forward, "once you run, you run up right."[25]

Woodhouse plainly states his report is offered to address Froese's testimony in this regard.  Woodhouse begins his report by stating he was "[s]pecifically . . . asked to assess

---

[22] ECF No. 195 at 1; *see also* ECF No. 187-2 at 2 (Woodhouse report, stating he was asked to consider—and did consider—whether the evidence suggested Smart was running in a crouched position when he was shot).

[23] ECF No. 191-3 (Froese Dep. transcript).  Bystander Adron Jones also testified during his May 19, 2015 deposition that Smart was "moving quite swiftly . . . like a crotch run. . . . [H]e was bent down just like – just getting like low and running." ECF No. 199-3 at 4.

[24] ECF No. 191-3 at 39.

[25] *Id.* at 40.

7

whether Mr. Smart was capable of receiving his fatal gunshot wounds while running from law enforcement in a crouched/head forward, bent over position at approximately 45 degrees or more at the waist." [26] After noting the materials he reviewed in reaching his expert opinion—which included the deposition transcript and statements given by Froese but *not* Sperry's report or deposition transcript—Woodhouse described how his biochemical analysis did not support *Froese's* testimony "in his April 14, 2016 deposition that at the time of the subject incident Mr. Smart was in a crouched/head forward, bent over position at approximately 45 degrees or more at the waist."[27] Woodhouse reaches the conclusion that "the trajectories of Mr. Smart's gunshot wounds are not biomechanically consistent with him running *as described by Officer Froese* in a crouched/head forward, bent over position at approximately 45 degrees or more at the waist."[28]

It is clear that Woodhouse's opinions were offered to rebut the April 14, 2016 statements of Froese, not the later expert testimony of Sperry. Froese's deposition occurred well before the January 27, 2017 scheduling-order deadline for plaintiffs to disclose their primary expert witnesses.[29] Thus, Woodhouse's opinion refuting Froese's testimony that Smart was running in a crouched position (i.e., a known defense theory) could have been

---

[26] ECF No. 187-2 at 2.

[27] *Id.* at 3.

[28] *Id.* at 4 (emphasis added).

[29] ECF No. 98 (Fourth Amended Scheduling Order).

8
O:\Trial\14-2111_Smart v. City of Wichita\14-2111-JPO-187.docx

timely submitted in support of plaintiffs' case in chief.[30] As noted above, "[t]he plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief."[31]

In addition to not being offered in response to a "new" theory, it is clear that Woodhouse's opinion on Smart's body position was not offered "solely to contradict or rebut evidence on the same subject matter" identified by another expert, as required by Rule 26(a)(2)(D)(ii). Plaintiffs assert Sperry's testimony that a person being shot at may try to "crouch over in a more exaggerated fashion" or "bend over more" is "an attempt to disqualify Dr. Ross's mannequin as a demonstrative device at trial."[32] But Sperry made these statements in response to a *general* question about whether he had ever done a study on "the normal body position of someone when they are running."[33] When Sperry was asked whether he had an opinion as to whether *Smart* was "upright, standing straight upright, bent over, in the process of falling down . . . at the time any of these wounds were

---

[30] *Stephenson*, 2011 WL 4900039, at *1 (quoting *Braun,* 84 F.3d at 237).

[31] *Id.; see also Foster v. USIC Locating Servs., LLC*, No. 16-2174-CM, 2018 WL 4003354, at *2 (D. Kan. Aug. 17, 2018) ("This is not a novel legal theory that came as a surprise to plaintiff. Plaintiff simply failed to prepare for every possibility when deciding what experts to designate in his case-in-chief, and now seeks to remedy this by offering new legal theories on rebuttal.").

[32] ECF No. 195 at 6 (quoting ECF No. 195-4 at 9 (Sperry Dep.)).

[33] ECF No. 195-4 at 8-9.

sustained," he answered that he did not.[34] Sperry stated—both in his report and in his deposition—that the upward trajectories of the bullets through Mr. Smart would be typical of someone in a running posture, e.g., "*a little bit* crouched over"[35] or "*slightly* bent at the waist."[36] And although Sperry testified one problem with mannequin trajectory models is they don't account for an individual "whom, like Mr. Smart, was running and moving," there was never any dispute in this case that Smart was running and moving.[37] Thus, Woodhouse's opinion that Smart was not in a crouched position when shot did not address any testimony by Sperry.

Because Woodhouse's opinions did not address a new theory in the case and were not intended solely to contradict evidence on the same subject matter identified in another expert's report, they are not proper expert rebuttal testimony as defined in Rule 26(a)(2)(D)(ii). Defendants' motion is granted to the extent it seeks the exclusion of Woodhouse as an expert at trial.[38]

Cornetto

---

[34] *Id.* at 8.

[35] *Id.* at 7 (emphasis added).

[36] ECF No. 195-2 at 8 (emphasis added).

[37] ECF No. 195-4 at 3.

[38] The court is aware the Tenth Circuit credited Woodhouse's opinion, in part, in reversing the grant of summary judgment as to Chaffee. *See* ECF No. 221-2 at 25. But in so doing the Circuit was viewing "the facts in the light most favorable to the plaintiffs," *id.*, a standard not applicable to the instant analysis.

Defendants next challenge plaintiffs' designation of Cornetto, a forensic mechanical engineer, as a rebuttal witness. Plaintiffs assert they designated Cornetto to rebut Sperry's criticisms that Ross's mannequin reconstruction of bullet trajectories was inaccurate because the length and girth of the mannequin did not match Smart's body structure. Cornetto did not prepare a written report,[39] but used the autopsy report and autopsy photographs to produce a computer-generated diagram of a body purportedly similar to Smart's on which he placed lines to depict his estimation of bullet trajectories.[40] He testified in deposition that he did a "qualitative comparison" of his diagram with Ross's mannequin model where he "looked and said, 'Yeah, they are in a generally similar direction to what I determined in my analysis.'"[41]

It's a close call whether Cornetto is offered to provide proper rebuttal testimony to Sperry's opinions. Cornetto did not address Sperry's specific concerns about the mannequin's disproportionate size compared to Smart's body—indeed, Cornetto did not review Sperry's report or deposition testimony.[42] However, Cornetto's opinions on bullet

---

[39] *See* ECF No. 187-5 at 3. Defendants have not moved to disqualify Cornetto on this technical basis, and the time for so moving has expired. *See* ECF No. 20 at 4. Defendants thus are deemed to have waived any objection on this basis. *See Signature Mktg., Inc. v. New Frontier Armory, LLC,* No. 15-7200-JWL, 2017 WL 36365, at *6 (D. Kan. Jan. 4, 2017).

[40] ECF No. 187-4; *see also* ECF No. 187-5 at 3 (Cornetto Dep. stating he was retained to determine the trajectory of gunshot wounds).

[41] ECF No. 187-5 at 5.

[42] *Id.* at 3.

11

trajectories as reflected in his diagram, and his deposition testimony that those reflected trajectories generally align with the trajectories in Ross's mannequin model, do ultimately address (and arguably refute) Sperry's conclusion that the mannequin's disproportionate size made Ross's opinions inaccurate. Sperry's opinions on the inherent problems in using mannequin models raised a new issue that plaintiffs could not have reasonably anticipated during their case in chief. The court thus finds that because Cornetto's opinions about bullet trajectories when Smart's body dimensions are taken into account could be used as evidence to contradict Sperry's opinions, Cornetto is a proper rebuttal expert.[43] Defendants' motion is denied to the extent it seeks to exclude testimony from Cornetto.

Ross

Plaintiffs re-named Ross, an expert in their case-in-chief, as a rebuttal expert. Plaintiffs first contend Ross's rebuttal report addresses "Sperry's criticism to the demonstrative mannequin"[44] by stating Ross's support of conclusions reached by Cornetto and Woodhouse. Ross's first supplemental conclusion is that Cornetto's diagram "reinforces" the trajectories displayed in Ross's mannequin model. Ross's second supplemental conclusion is that Woodhouse's analysis precludes a concept suggested by Sperry. The court excludes Ross's testimony in rebuttal on these two conclusions. The

---

[43] Defendants' complaint that Cornetto's diagram did not account for any change in Smart's body position may be fodder for cross-examination, but is not relevant to the court's decision to allow Cornetto to testify.

[44] ECF No. 195 at 9.

first conclusion does not directly address or refute Sperry's opinion, but instead simply supports another one of plaintiffs' experts who happens to be supporting Ross himself. This is not rebuttal testimony; it is testimony that readdresses issues already addressed by Ross in his initial report. The second conclusion is reached by analyzing the opinions of Woodhouse, which the court has concluded above will not come into the case.

Plaintiffs next contend Ross's rebuttal report is offered to "counteract" Haag's "new theory" that the "absence of powder residue on the back of Mr. Smart's shirt" excludes the possibility that Smart was prone on the ground when shot.[45] If Ross's supplemental report addressed the absence of gun powder or Haag's analysis on what such an absence implies, the court would find it proper rebuttal testimony. But Ross's rebuttal report is silent about the implications of the gun powder's absence. Instead, Ross simply points to other evidence in the case, such as the bullet holes in Smart's shirt, that allegedly "support the opinion that [Smart] was on the ground when shot."[46] Plaintiffs' theory that Smart was on the ground when shot was a significant part of plaintiffs' case-in-chief. Thus, any of Ross's opinions on this general topic must have been brought in his initial report, not in rebuttal. Ross will be precluded from testifying about his conclusion—reached long after submitting

---

[45] *Id.* at 10.

[46] ECF No. 187-10 at 2.

his initial report—that an analysis of bullet holes in Smart's shirt indicates Smart was on the ground when shot.[47]

Third, Ross's rebuttal report discusses evidence of "shoring" around certain exit wounds and the locations of bullet/bullet fragments recovered (both from inside Smart's body and the ground), both of which Ross opines are indicative of Smart's body being on the ground when shot. Ross discussed and relied on this evidence in reaching conclusions espoused in his original report.[48] His rebuttal report expands on his original opinions by criticizing Sperry's failure to consider wound shape in determining which wounds were shored. This is proper rebuttal testimony which will be allowed.

Finally, in his deposition taken after the submission of his rebuttal report, Ross discussed (1) that organic material is found in bricks, (2) that the exit velocity of bullets that went through Smart was "pretty darned fast," and (3) that pavers may or may not show marks if hit by a bullet.[49] Defendants argue these topics are beyond Ross's expertise as a forensic pathologist and his related opinions should be excluded under Fed. R. Evid. 702. Plaintiffs respond that Ross makes no definitive opinion on these topics and instead defers

---

[47] *Spirit Aerosystems, Inc. v. SPS Techs., LLC*, No. 09-CV-1144-EFM, 2013 WL 6196314, at *6 (D. Kan. Nov. 27, 2013) ("Allowable 'new information' does not include a response to another expert's report in a supplemental report if the information was available when the original report was due.").

[48] *See* ECF No. 187-6 at 5-7.

[49] ECF No. 187-9 at 6-9.

to defendants' experts.  Thus, defendants' motion in this regard appears moot, but in any event, the court will not permit Ross to testify about matters outside of his expertise.

For the above reasons, defendants' motion as applied to rebuttal testimony from Ross is granted except to the extent Ross's testimony is offered to contradict Sperry's opinions on shoring around bullet wounds.

IT IS THEREFORE ORDERED that defendants' motion to exclude rebuttal expert testimony is granted as applied to Woodhouse, denied as applied to Cornetto, and granted in part and denied in part as applied to Ross.

Dated July 2, 2020, at Kansas City, Kansas.

                                       s/ James P. O'Hara
                                       James P. O'Hara
                                       U.S. Magistrate Judge