IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THE ESTATE OF MARQUEZ SMART, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 14-2111-JPO |
| | ) | |
| THE CITY OF WICHITA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This case arises from the fatal shooting of Marquez Smart by police officers in Wichita, Kansas, on March 10, 2012.  Plaintiffs, the estate and heirs of Mr. Smart, bring claims against Officer Aaron Chaffee under 42 U.S.C. § 1983 for excessive force, and against Officer Chaffee and Officer Lee Froese under Kansas state law for negligence and wrongful death.[1]  In anticipation of trial, defendants have filed a motion (ECF No. 188) asking the court to exclude from evidence expert testimony from Michael D. Lyman, whom

---

[1] Plaintiffs also brought federal claims against Officer Froese and the City of Wichita, but those claims were dismissed on summary judgment.  ECF Nos. 205, 206 (upheld on appeal in ECF No. 221).  A motion to set aside summary judgment on plaintiffs' state-law claims against Officers Froese and Chaffee is pending (ECF No. 228).  The court therefore refers to "defendants" in the plural, although it is possible Officer Chaffee may be the only defendant at trial.

1

plaintiffs designated as an expert on police procedures.  For the reasons discussed below, the motion is granted in part and denied in part.

## I.    Background

In the early morning hours of March 10, 2012, as hundreds of people left bars and concert venues in Wichita's Old Town neighborhood at closing time, a gunshot rang out. Mr. Smart, who is black, began running and was pursued on foot by Wichita police officers. It is undisputed that Mr. Smart was shot multiple times by Officers Froese and Chaffee, and died from sustained gunshot wounds.

Plaintiffs filed suit against the City of Wichita ("the City") and Officers Froese and Chaffee, alleging the officers used excessive force against Mr. Smart in violation of the Fourth Amendment and that this was due to an unlawful policy, practice, or custom adopted by the City.  Plaintiffs also advanced claims for negligence and wrongful death under Kansas state law.  This court granted summary judgement for Officers Froese and Chaffee on qualified immunity grounds.[2]  The court also granted summary judgment for the City, finding plaintiffs had failed to point to facts showing a City custom or policy was the moving force behind the shooting of Mr. Smart.  The court declined to exercise supplemental jurisdiction over plaintiffs' remaining state-law claims.

On appeal, the Tenth Circuit affirmed the grant of summary judgment as to all defendants on Counts I and II, and as to Officer Froese and the City as to Count III.  But

---

[2] ECF No. 205.

O:\Trial\14-2111_Smart v. City of Wichita\14-2111-JPO-188.docx

the Circuit reversed the grant of summary judgment as to Officer Chaffee on plaintiffs' claim that Officer Chaffee shot Mr. Smart after it would have been apparent to a reasonable officer that Mr. Smart was not a threat. The Circuit remanded this claim for further proceedings consistent with its decision, and the court set the case for trial in January 2020.

Plaintiffs have designated Lyman, whose qualifications include more than 40 years working as a law enforcement agent, criminal investigator, police trainer, and college professor, as an expert expected to testify at trial.  Lyman's Fed. R. Civ. P. 26(a)(2)(B) written report states he will express the overarching opinion that the use of deadly force by Officers Froese and Chaffee "was unjustified, excessive and served no objectively reasonable purpose."[3]  Defendants have moved to exclude Lyman from testifying at trial, asserting his opinions do not meet the criteria for the admissibility of expert testimony.

## II.    Legal Standards for the Admissibility of Expert Testimony

Fed. R. Evid. 702 governs the admissibility of expert testimony:[4]

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[3] ECF No. 188-2 at 11.  Lyman further planned to opine that the Wichita Police Department failed to conduct a proper internal investigation into the shooting and that police administrators ratified the officers' conduct, *id.* at 22-29, but those opinions are no longer relevant in light of the City's dismissal from this case.  It should go without saying that an expert's testimony must be otherwise admissible; the court will not permit testimony that is not relevant to a fact at issue in the case, nor testimony that is cumulative. *See* Fed. R. Evid. 401 & 403.

[4] *Hoffman v. Ford Motor Co.*, 493 F. App'x 962, 972 (10th Cir. 2012) (citing *United States v. Call*, 129 F.3d 1402, 1404 (10th Cir. 1997)).

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

From this rule, the Tenth Circuit has developed a gatekeeping test for trial courts to apply in considering the admissibility of proposed expert testimony. First, the court must decide "whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[5] Second, the court "'must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact.'"[6] "To be reliable, the opinions must be within the witness's area of expertise, be based on facts and data reasonably relied on by experts in the field (Rule 104(a)), and not be speculative or mere guesswork."[7] To be relevant, the opinions "must assist the fact-finder in understanding the evidence or determining a fact in issue."[8] Expert opinions that "merely

---

[5] *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting Fed. R. Evid. 702)).

[6] *Id.* (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)).

[7] *Richard v. Hinshaw*, No. 09-1278-MLB, 2013 WL 6632122, at *2 (D. Kan. Dec. 17, 2013).

[8] *Hoffman*, 493 F. App'x at 975 (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 591 (1993)).

4

tell the jury what result to reach" are inadmissible.[9]  Additionally, it is the duty of the trier of fact to determine whether a witness's testimony is credible.  Thus, as a general matter, expert testimony regarding the credibility of witnesses is not relevant and is inadmissible.[10]

Finally, "an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying law to the facts."[11]  Although expert testimony is not objectionable simply because it embraces an ultimate issue to be decided by the trier of fact,[12] a court may exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be.[13]  Experts "'should avoid legal conclusions, which usurp[ ]

---

[9] *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) (quoting Advisory Committee Notes to Fed. R. Evid. 704).

[10] *United States v. Adams*, 271 F.3d 1236, 1246 (10th Cir. 2001).  *See also Wilson v. Muckala*, 303 F.3d 1207, 1218 (10th Cir. 2002) ("The credibility of witness testimony is a matter left to the jury and generally is not an appropriate subject for expert testimony.").

[11] *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003) (quoting *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998)) (concluding that whether defendants acted "recklessly" was a legal conclusion and thus properly excluded).

[12] Fed. R. Evid. 704(a) (allowing opinion testimony embracing an "ultimate issue" if the opinion is not otherwise objectionable).

[13] *Ornelas v. Lovewell*, No. 11-2261-JAR, 2013 WL 3271016, at *6 (D. Kan. June 27, 2013) (quoting *Ortega v. City & Cnty. of Denver*, Nos. 11-2395, 11-2395, 11-2396, and 11-2397, 2013 WL 438579, at *3 (D. Colo. Feb. 5, 2013), which in turn quoted Fed. R. Evid. 704).  *See also Zuchel v. City & Cnty. of Denver*, 997 F.2d 730, 742–43 (10th Cir. 1993) (holding that expert testimony on whether an officer's conduct was "inappropriate" based on generally accepted police custom and practice was admissible, but noting that testimony about whether the conduct was "unconstitutional" would not have been permissible).

the jury's role'"[14] and "should refrain from stating their opinions about legal standards or legal conclusions drawn by applying law to the facts."[15]  "When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination."[16]

"The proponent of expert testimony bears the burden of showing that the testimony is admissible."[17]  Although the court has broad discretion in deciding whether to admit or exclude expert testimony,[18] the court is mindful that exclusion of expert testimony should be "the exception, not the rule."[19]

## III.    Analysis

Defendants do not seriously question Lyman's qualifications as an expert in police practices and procedures, and the court finds Lyman's education and experience render him qualified to opine on this topic.[20]  Thus, the court turns to the second part of the

---

[14] *United States v. Reulet,* No. 14-40005-DDC, 2015 WL 7776876, at *6 (D. Kan. Dec. 2, 2015) (quoting *United States v. Bates*, No. 1:11-cr-00123-BLW, 2012 WL 1579590, at *1 (D. Idaho May 4, 2012)); *see also Ornelas*, 2013 WL 3271016, at *6 (ruling "an expert witness's testimony may not usurp the jury's fact-finding function").

[15] *Reulet*, 2015 WL 7776876, at *6.

[16] *Id.* (quoting *Bates*, 2012 WL 1579590, at *1).

[17] *Conroy*, 707 F.3d at 1168 (citing *Nacchio*, 555 F.3d at 1241).

[18] *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1498 (10th Cir. 1996) (quoting *Orth v. Emerson Elec. Co.*, 980 F.2d 632, 637 (10th Cir. 1992)).

[19] *Reulet*, 2015 WL 7078917, at *2 (quoting Advisory Committee Notes to Fed. R. Evid. 702).

[20] Lyman's qualifications include working more than 40 years as a law enforcement agent, criminal investigator, police trainer, and college professor in the field of policing.

6

gatekeeping test: whether, under the above standards, Lyman's opinions are reliable and relevant such that they will assist the jury.  Upon examination of Lyman's expert report, the court finds the bulk of his statements and opinions inadmissible.

First, Lyman begins the opinion section of his report with a discussion of "constitutional standards" and his interpretation of Supreme Court caselaw.[21]  Defendants argue Lyman's interpretation of the law "erroneously limits the circumstances in which deadly force is permissible."[22]  As set forth above, it is inappropriate for an expert to "state his or her opinion as to legal standards."[23]  An expert may not encroach "upon the trial court's authority to instruct the jury on the applicable law, for it is axiomatic that the judge is the sole arbiter of the law and its applicability."[24]  Thus, the court will prohibit Lyman from testifying about what legal standards apply to the claims in this case.

Second, Lyman opines in a number of places that the actions of Officer Chaffee and/or Officer Froese were "unjustified," "excessive," or "unreasonable."[25]   The court must determine whether testimony of this sort is admissible testimony about an ultimate

---

ECF No. 188-1 at 3. He has researched, taught, and published in the area of police procedures and has worked as a police instructor, training officers and officer candidates on police techniques and procedures.  *Id.*

[21] ECF No. 188-2 at 10-11.

[22] ECF No. 188 at 12.

[23] *Christiansen*, 332 F.3d at 1283.

[24] *Specht*, 853 F.2d at 807.

[25] *See, e.g.,*  ECF No. 188-2 at 11, 13, and 21.

fact or an inadmissible legal conclusion drawn by applying the law to the facts.  If the testimony "articulates ultimate principles of law" and directs a verdict, it is impermissible.[26]  But if the testimony merely assists "the jury's understanding and weighing of the evidence," it is permissible.[27]

The ultimate legal question the jury will be asked to decide in evaluating plaintiffs' excessive-force claim is whether Officers Froese and Chaffee used "reasonable" force, as defined by Fourth Amendment jurisprudence, in shooting Mr. Smart.[28]  Whether an officer has used excessive force is judged by a standard of "objective reasonableness," which will require the jury to determine whether a "reasonable officer on the scene" would have concluded that a threat existed justifying the use of deadly force.[29]

The court finds Lyman's opinions that officers' actions were "excessive" and "unreasonable" are legal conclusions that usurp the jury's role by applying the facts to the law.  Because these "opinions do not assist the trier of fact in understanding the evidence,

---

[26] *Specht*, 853 F.2d at 808.

[27] *Id.*

[28] *See* ECF No. 221-2 at 27; *Pauly v. White,* 874 F.3d 1197, 1214-15 (10th Cir. 2017) ("All claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.").

[29] *Pauly,* 874 F.3d at 1215; *see also Ornelas*, 2013 WL 3271016, at *6 ("Whether an officer has used excessive force is judged by a standard of objective reasonableness, which requires a jury to determine whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." (internal quotation and citation omitted)).

but rather embrace the ultimate issue," the court will not permit such testimony.[30] Although the court does not doubt plaintiffs' assertion that police officers across the country are trained on the legal definition of "reasonableness" and that court cases defining this term are the basis for generally accepted police standards, opining that a defendant's action "was not objectively reasonable under the circumstances,"[31] for example, "simply tell[s] the jury what result it should reach."[32] The court will instruct the jury on the reasonableness standard, and it will be the jury's role to apply that standard to defendants' conduct.

Third, and relatedly, defendants move to exclude Lyman's opinions that the officers failed to follow nationally recognized policing standards and/or Wichita Police Department policy.[33] As defendants correctly note, the Tenth Circuit has recognized that violations of general law-enforcement standards or of a police-department regulation are insufficient to

---

[30] *Parker v. Wal-Mart Stores, Inc*., 267 F.R.D. 373, 376 (D. Kan. 2010). *See also Ornelas*, 2013 WL 3271016, at *7 (excluding expert testimony "as to the ultimate issue in this case—whether [officer's] use of force was excessive or unreasonable"); *Zuchel*, 997 F.2d at 742–43 (holding that expert testimony on whether an officer's conduct was "inappropriate" based on generally accepted police custom and practice was admissible, but noting testimony about whether the conduct was "unconstitutional" would not have been permissible).

[31] ECF No. 188-2 at 21.

[32] *Parker*, 267 F.R.D. at 376.

[33] *See, e.g.,* 188-2 at 22.

9

establish liability under § 1983 for excessive force.[34]   An officer may violate local or generally accepted police procedures, but "the jury could nonetheless find he acted reasonably."[35]   For this reason, in *Marquez v. City of Albuquerque,* the Tenth Circuit found it was not an abuse of discretion for the district court to exclude testimony that an officer's actions "violated well established law enforcement standards."[36]   The Circuit agreed such testimony was "both irrelevant and confusing on the ground that violation of such standards is not *ipso facto* a Fourth Amendment violation."[37]

On the other hand, expert testimony about whether conduct at issue violated generally accepted police custom and practice *has* been deemed relevant and admissible in excessive-force cases involving (1) claims against municipalities alleging a police department policy, practice, or custom permitted officers to use excessive force[38] and/or

---

[34] *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005); *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001); *Romero v. Bd. of Cty. Comm'rs*, 60 F.3d 702, 705 (10th Cir. 1995).

[35] *Marquez*, 399 F.3d at 1222.

[36] *Id.*

[37] *Id.; see also Ornelas*, 2013 WL 3271016, at *7 (excluding as irrelevant to the Fourth Amendment inquiry expert testimony that defendant-officer did not follow police department guidelines or generally accepted policy and training).

[38] *Zuchel*, 997 F.2d. at 742–43; *Choate v. City of Gardner*, *Kan.,* No. 16-2118-JWL, 2020 WL 774097, at *3 (D. Kan. Feb. 18, 2020) (distinguishing *Zuchel* and *Marquez* on the basis that *Zuchel* involved a claim of municipal liability, and allowing testimony on violation of police procedures and practices as relevant to a municipal-liability claim); *Martinez v. Salazar*, No. CV 14-534 KG/WPL, 2016 WL 9488862, at *8 (D.N.M. Dec. 14, 2016) (excluding expert testimony on whether officers "followed police policies and practices as it relates to Plaintiff's excessive force claim under Section 1983," but

(2) state-law claims alleging an officer acted negligently.[39]   Although plaintiffs' claims against the City have been dismissed from the case, the court has yet to determine whether it will exercise supplemental jurisdiction over plaintiffs' state-law claims, including the negligence claim.[40]   Defendants have not argued Lyman's testimony in this regard should be excluded as to the negligence claim.   Therefore, *if the court exercises supplemental jurisdiction over plaintiffs' negligence claim*, the court will permit Lyman to offer his opinion on whether officer conduct violated generally accepted police practices.   In such an instance, the court will reduce the risk that the jury will improperly consider the testimony in connection with plaintiffs' excessive-force claim by giving a limiting instruction.[41]

---

permitting such testimony "in relation to Plaintiff's state law claims and municipal claims").

[39] *Choate,* 2020 WL 774097, at *3 ("Defendants have not offered any authority or argument that police procedures and practices would not be relevant to a claim of negligence, and therefore the Court denies the motion to exclude such testimony."); *Martinez*, 2016 WL 9488862, at *8.

[40] As mentioned above, this matter is pending before the court in plaintiffs' Fed. R. Civ. P. 60(b)(5) motion to set aside summary judgment and exercise supplemental jurisdiction over state-law claims.  *See* ECF No. 228.  Defendants' response to that motion asserts plaintiffs' negligence claim is essentially one of battery.  ECF No. 232 at 5-7.  Such an argument was also asserted in *Choate,* but was rejected. 2020 WL 774097, at *3.  The court makes no decision on this issue at this time.

[41] *See Martinez*, 2016 WL 9488862, at *9 ("The Court acknowledges that, in admitting this testimony [on whether officers followed police practices] in connection with Plaintiff's remaining claims, there is a risk that the jury will improperly consider the testimony in connection with Plaintiff's excessive force claims under Section 1983. However, this risk can be sufficiently reduced with a limiting instruction at trial.").

11

In addition, whether or not the state-law claims are alive at the time of trial, the court will permit Lyman to testify generally about standard police procedures to the extent they are implicit in an opinion about how a reasonable officer would act under certain circumstances.  Since *Marquez*, courts in our district have recognized that, although expert opinions on excessive force should not rest solely upon professional standards, a jury of lay persons "might be assisted by the testimony of a person who has specialized knowledge in the area of police procedures" in deciding "'from the perspective of a reasonable officer' whether there was excessive force."[42]  Thus, in *Reindl v. City of Leavenworth*, the court admitted the testimony of a police-practices expert about what "a reasonable officer under similar circumstances" would have done under the facts in the case.[43]  And in *Ornelas v. Lovewell*, the court admitted expert "opinion on the proper procedures for using force, i.e., opinions relating to general police procedures and standards to which officers adhere and how, in his opinion, they apply to the disputed facts of this case," even while prohibiting

---

[42] *Reindl v. City of Leavenworth*, No. 04-2584-RDR, 2006 WL 2631947, at *4 (D. Kan. Sept. 13, 2006).

[43] *Id.* at *5 (permitting the opinion that "[p]rior to baton strikes, a reasonable officer under similar circumstances would have first utilized the overwhelming police presence to force [suspect] into handcuffs").  The court notes that the *Reindl* court, while not deciding the issue in ruling the motion in limine, reserved for trial the question of whether it would permit expert testimony on the ultimate issue of whether "[t]he use of the baton by [the officer] was not a reasonable use of force, based on the totality of circumstances." *Id.*  For the reasons discussed above, this court will not permit testimony by Lyman on whether defendants' actions met the constitutional standard of reasonableness.

12

the expert from testifying the defendant did not follow generally accepted policy.[44]  This approach appears to have been condoned by the Tenth Circuit in *Cavanaugh v. Woods Cross City*.[45]  Although the *Cavanaugh* Court did not directly address the admissibility of expert testimony, it suggested that the officer-defendant could have called "[a] police practices expert [to] testif[y] that under the circumstances faced by [the officer] a reasonable officer would have concluded [the suspect] was a threat and used similar force."[46]

The court finds the reasoning in *Reindl* and *Ornelas* well taken.  An expert's explanation of police training and protocols on the use of force will assist the lay juror in evaluating evidence and deciding whether other officers would have responded as Officers Froese and Chaffee did if confronted with the same circumstances.   Thus, although the court will exclude Lyman from testifying that Officer Chaffee or Officer Froese violated Wichita Police Department policy or nationally accepted police standards if only the federal claim remains, the court will permit him to offer testimony on accepted police standards and how, in his opinion, they apply to the facts presented in this case.  The court

---

[44] 2013 WL 3271016, at *7.

[45] 718 F.3d 1244, 1250 (10th Cir. 2013).

[46] *Id.* (ruling the trial court committed harmless error in not excluding testimony about an officer-defendant's subjective state of mind and stating that an "alternative way[]" for the defendant to "ensure the jury connected the dots from the objective facts to the conclusion that force was warranted" was to call a police-practices expert to testify about what a reasonable officer would have concluded).

O:\Trial\14-2111_Smart v. City of Wichita\14-2111-JPO-188.docx

finds such opinion testimony could be useful to the jury in determining whether, under the facts presented, the officers acted in accordance with how a reasonable officer on the scene would have acted.  If requested, however, the court will instruct the jury that a police officer may be found to have violated accepted police standards but nonetheless to have acted reasonably under the applicable Fourth Amendment standards.

    Fourth, defendants ask the court to preclude Lyman from testifying that the evidence "reasonably supports the premise that Smart was shot while on the ground."[47]  The evidence Lyman's report references is bullet trajectories, a discussion of wound shoring in the report of plaintiffs' expert forensic pathologist, Wayne Ross, and a discussion of the impact of bricks on bullets by plaintiffs' ballistics expert, Richard Ernest.[48]  None of these topics appear to fall within Lyman's stated areas of expertise;[49] it appears Lyman is simply throwing his support behind plaintiffs' other experts.  Such regurgitation of another expert's testimony does nothing to assist the jury in reaching their decision, as required by Rule 702.  "Where [an expert] brings no additional or other expertise to bear on the issue, there is no basis for him simply repeating the conclusions of others as his own."[50]  Because Lyman is not independently qualified to offer expert opinions on whether bullet-trajectory

---

[47] ECF no 188-2 at 17-18.

[48] *Id.* at 18-19.

[49] *See id.* at 3-5.

[50] *Raley v. Hyundai Motor Co*., No. CIV-08-0376-HE, 2010 WL 199976, at *6 (W.D. Okla. Jan. 14, 2010) (citing *TK–7 Corp. v. Est. of Barbouti*, 993 F.2d 722, 732–33 (10th Cir.1993)).

14

analysis, wound shoring, or ballistics analysis indicate Mr. Smart was prone on the ground when shot, the court will exclude his testimony on this issue.

Fifth, defendants move to exclude Lyman's testimony that "it is likely that [Mr. Smart] was defending himself from the original shooter"[51] because it is "based on speculation."[52]   Plaintiffs do not address this argument.   The court agrees that this conclusion is based on speculation of what Mr. Smart may have known at the time.   As such, it is impermissible and will be excluded.[53]

Finally, the court will not permit Lyman to testify about "inconsistencies" in witnesses' versions of events.[54]   Such testimony is in the nature of a credibility determination—a determination of who is being truthful and who is not—which is in the sole province of the jury.[55]

The court will not parse Lyman's 29-page report paragraph by paragraph (particularly since many of the expressed opinions are no longer relevant to claims that remain in the case), but expects the parties to apply the above rulings when Lyman is called

---

[51] ECF No. 188-2 at 21.

[52] ECF No. 188 at 14.

[53] *Choate*, 2020 WL 774097, at *4 ("The Court will not permit experts to speculate about what another person knew at a particular time.").

[54] *See, e.g.,* 188-2 at 5-6 (opining on alleged inconsistencies in the statements of Officers Froese and Chaffee).

[55] *Wilson*, 303 F.3d at 1218 ("The credibility of witness testimony is a matter left to the jury and generally is not an appropriate subject for expert testimony.").

O:\Trial\14-2111_Smart v. City of Wichita\14-2111-JPO-188.docx

as a witness at trial.  Subject to something unexpected occurring at trial (such as the need to impeach Lyman with a portion of his report), the court will exclude in whole the report itself from admission as a trial exhibit.[56]  The court finds that admitting the report would confuse the jury.  The report is rife with legal definitions and, as noted above, it will be the court's role to instruct the jury on the law.  Moreover, the report references events and legal claims that are no longer relevant after the court's summary-judgment rulings.  The report also contains a lengthy summary of the facts as Lyman understands them, but the court will ask the jury to only consider the facts that have been presented through evidence at the trial.

IT IS SO ORDERED.

Dated July 2, 2020, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[56] *See Law v. Nat'l Collegiate Athletic Assoc.*, 185 F.R.D. 324, 342 (D. Kan. 1999) ("[A]n expert's written report is generally inadmissible.").

16