UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THE ESTATE OF MARQUEZ SMART, | ) | |
| by Randall Smart and Brenda Bryant | ) | |
| as Administrators of the Estate of | ) | |
| Marquez Smart, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-2111-JPO |
| | ) | |
| OFFICER AARON CHAFFEE, | ) | |
| in his individual capacity, | ) | |
| | ) | |
| Defendant. | ) | |

## OMNIBUS LIMINE ORDER

This case arises from the fatal shooting of Marquez Smart by police officers in Wichita, Kansas.  Plaintiff, Mr. Smart's estate, alleges defendant, Officer Aaron Chaffee, used excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983.  A jury trial is scheduled to begin August 16, 2021.[1]  Currently before the court are the parties' motions in limine (ECF Nos. 260 & 261).  As explained below, defendant's motion is denied, and plaintiff's motion is granted in part and denied in part.[2]

---

[1] A January 11, 2021 trial setting was moved at the parties' request due to the COVID-19 pandemic.  *See* ECF Nos. 263, 265.

[2] As discussed in Section III below, this omnibus limine order supplements the court's November 3, 2020 limine order which was based on stipulations reached by the parties.  ECF No. 257.

1

# I.      Background

In the early morning hours of March 10, 2012, as hundreds of people left bars and concert venues in Wichita's Old Town neighborhood at closing time, a gunshot rang out. Chaos ensued as people in the crowd began screaming and running.  Mr. Smart ran and was pursued on foot by Wichita police officers.  It is undisputed that Officer Chaffee and Officer Lee Froese intentionally shot Mr. Smart multiple times from behind.  Mr. Smart died from the gunshot wounds.

Mr. Smart's parents, acting as both administrators of his estate and as his heirs, filed suit against the City of Wichita ("the City") and Officers Froese and Chaffee, alleging the officers used excessive force against Mr. Smart in violation of the Fourth Amendment and that this was due to an unlawful policy, practice, or custom adopted by the City.  This court granted summary judgment for Officers Froese and Chaffee on qualified-immunity grounds.[3]  The court also granted summary judgment for the City, finding no evidence that a City custom or policy was the moving force behind the shooting of Mr. Smart.[4]  The court declined to exercise supplemental jurisdiction over negligence and wrongful-death claims brought under Kansas law.[5]

---

[3] ECF No. 205.

[4] *Id.*

[5] *Id.* at 56.

O:\Trial\14-2111_Smart v. City of Wichita\-260, 261 MIL order.docx

On appeal, the Tenth Circuit affirmed the grant of summary judgment on most counts, but reversed the grant of summary judgment as to Officer Chaffee on the § 1983 claim that Officer Chaffee used excessive force by shooting Mr. Smart after it became apparent Mr. Smart posed no threat.[6]  Thus, the central issue before the jury at trial will be whether Officer Chaffee violated Mr. Smart's right to be free from excessive force by shooting Mr. Smart after a reasonable officer at the scene would have concluded that Mr. Smart was not a threat (e.g., that Mr. Smart was no longer a threat or was never a threat to begin with).[7]

## II. Governing Legal Standards

In ruling on motions in limine, the court applies the following, well-established standard:

> The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground.  The court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded.  At trial, the court may alter its limine ruling based on developments at trial or on its sound judicial discretion.  Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.  Denial only means that the court cannot decide admissibility outside the context of trial.  A ruling in limine does not

---

[6] *Estate of Smart v. City of Wichita*, 951 F.3d 1161, 1177 (10th Cir. 2020). Following the Tenth Circuit's ruling, this court denied a motion to revive the state-law claims in this action.  ECF No. 236.  Thus, the remaining claim in this case pits Mr. Smart's estate against Officer Chaffee in his individual capacity.

[7] *Estate of Smart,* 951 F.3d 1161 at 1176-77.

3

relieve a party from the responsibility of making objections, raising motions to strike or making formal offers of proof during the course of trial.[8]

## III.   First Order in Limine (ECF No. 257)

On November 3, 2020, the court issued a limine order adopting a stipulation by the parties.[9]  Under that order, reference to the following categories of evidence is prohibited at trial: (1) evidence of insurance coverage for defendant; (2) evidence of any obligation of the City to defend or indemnify defendant from any judgment; (3) evidence of settlement discussions, negotiations, offers, or demands; (4) evidence related to other shootings or uses of force by other Wichita police officers; and (5) evidence of emotional distress, bereavement, mental anguish, or loss of companionship, society, or emotional or financial support of Mr. Smart's parents as a result of his death.

## IV.   Defendant's Motion in Limine (ECF No. 260)

Defendant moves the court to preclude the introduction of evidence about (and reference to) four matters.  As explained below, defendant's motion is denied as to all matters.

---

[8] *Dunlap v. Nielsen*, No. 16-CV-2400-JAR, 2018 WL 9669834, at *1 (D. Kan. Mar. 23, 2018) (quoting *First Sav. Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1082 (D. Kan. 2000)).

[9] ECF No. 257.

1.     Evidence that Mr. Smart was not Armed and was not the Shooter

Defendant first moves the court to preclude evidence suggesting Mr. Smart was not armed or did not fire a weapon on the night of his death.  This includes evidence that no fingerprints were found on a handgun recovered near where Mr. Smart fell after being shot, DNA evidence that did not tie Mr. Smart to that handgun, evidence that no gunshot residue was found on Mr. Smart's hands, and testimony from witnesses that they never saw a gun in Mr. Smart's possession.  Defendant argues such evidence is not relevant or, even if relevant, is more prejudicial than probative.  The court disagrees.

Under Fed. R. Evid. 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  As noted above, the determinative question at trial will be whether a reasonable officer would not have fired the final shots at Mr. Smart because the officer perceived Mr. Smart was not (or was no longer) a threat.  Evidence speaking to whether Mr. Smart had or fired a gun on the night in question has a tendency to make the reasonableness of the final shots more or less probable.  Evidence indicating Mr. Smart did not have a gun at the time of the final shots, including testimony that he did not have a gun at any time during the course of the night, could certainly weigh into the jury's consideration of how a reasonable officer would evaluate the threat Mr. Smart posed at the time of the shots.  In other words, such facts are material to how the jury answers the question of reasonableness.

5

O:\Trial\14-2111_Smart v. City of Wichita\-260, 261 MIL order.docx

It is true, as defendant notes, that Officer Chaffee is immune from liability arising from his earlier shots at Mr. Smart, based on his *perception* that Mr. Smart was an active shooter and therefore a threat (even if Mr. Smart did not *actually* possess a gun).[10] But that begs the question of whether Mr. Smart was reasonably perceived as a threat at the time Officer Chaffee fired the fatal shots. Officer Chaffee is expected to testify that he fired those shots because he perceived Mr. Smart as an armed threat. The Tenth Circuit has recognized, however, that whether or not Mr. Smart had a gun is a fact in dispute.[11] Officer Chaffee's actions will be evaluated under the standard of an objectively reasonable officer, rather than his subjective state of mind, but the facts that would have been known to Officer Chaffee are relevant to the evaluation. "That factual predicate is the basis on which the

---

[10] *Estate of Smart,* 951 F.3d at 1171-74.

[11] *See e.g., id.* at 1170 ("Here, the plaintiffs' forensic evidence, the multiple eyewitnesses who did not see Mr. Smart holding a gun (particularly Ms. James, who was standing only a few feet from Mr. Smart), and the testimony from Mr. Smart's longtime friend, Mr. Wilson, that Mr. Smart never owned or carried a gun, all 'tend to discredit the police officers['] story' . . . creating a dispute of fact as to whether Mr. Smart had a gun on the night of the shooting."); *id.* at 1176 ("[T]he plaintiffs point to several circumstances that, if true, could have put Officer Chaffee on notice that Mr. Smart posed no threat: Mr. Smart fell to the ground, had his arms outstretched *with his empty hands visible*, and looked back at Officer Chaffee and shook his head. And other eyewitnesses who, just like Officer Chaffee, were in the midst of a chaotic situation, had time to perceive that Mr. Smart did not pose a threat. Therefore, a reasonable jury could conclude that Officer Chaffee violated Mr. Smart's right to be free from excessive force by firing the final shots at Mr. Smart after Officer Chaffee had had 'enough time ... to recognize and react to' the fact that Mr. Smart no longer posed a threat (if in fact he ever did pose a threat)." (emphasis added)).

6

reasonableness of the officer's actions is judged."[12]   Thus, the jury's resolution of this factual dispute will impact their decision about whether Officer Chaffee's actions were reasonable.  Evidence speaking to this dispute is relevant.[13]

Fed. R. Evid. 403 provides that, although relevant, evidence may be excluded "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   "[E]xclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."[14] "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case.  To be unfairly prejudicial, the evidence must have an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[15]

---

[12] *Finch v. City of Wichita*, No. 18-1018-JWB, 2020 WL 3403121, at *24 (D. Kan. June 19, 2020).

[13] *See, e.g., Boyd v. City & Cnty. of San Francisco,* 576 F.3d 938, 944 (9th Cir. 2009) ("In a case such as this, where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible."); *Cordova v. City of Albuquerque*, 816 F.3d 645, 659 (10th Cir. 2016) ("Contextual evidence can be admitted to help explain later events, especially where it might make one version of events more or less likely.").

[14] *United States v. Smalls*, 605 F.3d 765, 787 (10th Cir. 2010).

[15] *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (internal citations and quotations omitted).

Defendant argues evidence related to Mr. Smart not possessing or shooting a gun is "more prejudicial than probative" because it will "prolong the trial and confuse the jury, effectively nullifying the law of the case that both officers are qualifiedly immune from claims based on their perception that Smart was the shooter and was the threat."[16]  As implied above, the court finds evidence speaking to whether Mr. Smart had a gun highly probative, particularly since it goes to the jury's evaluation of the determinative question in the case.  On the other side of the scale, the court finds the danger of unfair prejudice or confusion to be low.  Although the Tenth Circuit affirmed a finding of qualified immunity as to claims against Officer Chaffee for his actions earlier in the evening, plaintiff correctly notes that this does not preclude all evidence regarding the facts surrounding those matters if they are relevant to the claim in dispute.  Defendant has offered no support for his assertion that admitting such evidence will "nullify the law of the case."  The court is not persuaded defendant will be *unfairly* prejudiced by admission of such evidence.  If anything, prohibiting evidence suggesting Mr. Smart did not have a gun implicitly creates the impression that Mr. Smart was armed and a threat before Officer Chaffee fired the final shots.  This impression would be unfairly prejudicial to plaintiff and could confuse the jury. The court does not find defendant has met his burden under Rule 403.  Defendant's motion is **denied** as to his first request.

---

[16] ECF No. 260 at 4.

O:\Trial\14-2111_Smart v. City of Wichita\-260, 261 MIL order.docx

2.    <u>Evidence Challenging the Police Department's Investigation</u>

Following the incident, the Wichita Police Department ("WPD") investigated the circumstances surrounding Mr. Smart's death.  Plaintiff contends the investigation was egregious because, among other things, the WPD did not conduct a DNA test on the recovered gun, did not pursue witness interviews or leads that contradicted officers' version of events, did not test for gunshot residue on Mr. Smart's hands, and refused to perform a Professional Standards (i.e., internal affairs) investigation into the conduct of Officers Chaffee and Froese.[17]  Defendant seeks to exclude evidence and argument challenging the adequacy of the investigation, asserting it is not relevant or is more prejudicial than probative.

Plaintiff counters that even though the City is no longer a party and no liability will attach in this action based on the alleged inadequacy of the WPD's investigation, the circumstances of the investigation—such as what was or what was not asked of witnesses—is relevant to witness credibility.  Plaintiff argues it "should be allowed to impeach, challenge, and possibly rehabilitate any witness's credibility with evidence derived from or related to the investigation."[18]

Plaintiff's argument seems plausible, depending on what evidence is presented at trial.  The court does not have enough information at this juncture, without the context of

---

[17] *See* ECF No. 184 at 7-8 (pretrial order).

[18] ECF No. 271 at 6.

9

trial, to make a definitive ruling excluding evidence challenging the investigation.  This portion of defendant's motion is **denied**, but without prejudice to defendant objecting at trial based on specific questions and testimony offered.

3.   Evidence or Argument Seeking Hedonic Damages and
      Damages for Loss of Consortium

As stated in the pretrial order, plaintiff seeks to recover survival damages for Mr. Smart's pain and suffering.[19]  Based on Kansas law, defendant moves to exclude evidence and argument seeking hedonic damages (i.e., damages for Mr. Smart's loss of enjoyment of life)[20] and damages for Mr. Smart's loss of consortium.

In *Berry v. City of Muskogee*, the Tenth Circuit rejected an argument that remedies under § 1983 were limited to those provided by state survival actions, supplemented by state wrongful death acts.[21]  Instead, the Tenth Circuit concluded "that the federal courts must fashion a federal remedy to be applied to § 1983 death cases."[22]  It determined the estate of a deceased victim bringing a survival action could recover compensatory damages

---

[19] ECF No. 184 at 12.

[20] *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1244 (10th Cir. 2000) (describing "hedonic" damages as "value of life" damages and "loss of enjoyment of life" damages).

[21] 900 F.2d 1489, 1506 (10th Cir. 1990).

[22] *Id.* at 1506–07.  *See also Lee v. N.M. Interstate Agreement on Detainers*, No. CV 06-0149 KBM/ACT, 2006 WL 8443592, at *4 (D.N.M. Oct. 11, 2006) ("[I]instead of borrowing a state's law to define available damages, the Tenth Circuit established a uniform rule to govern damages recoverable under § 1983 when a death results from the violation of constitutional rights.").  The Eighth Circuit adopted this position in *Andrews v. Neer*, 253 F.3d 1052, 1063–64 (8th Cir. 2001) (citing *Berry*, 900 F.2d at 1506).

10

that "include medical and burial expenses, pain and suffering before death, loss of earnings based upon the probable duration of the victim's life had not the injury occurred, the victim's loss of consortium, and other damages recognized in common law tort actions."[23]

Courts that have addressed the issue of hedonic damages in § 1983 death cases have interpreted *Berry* as permitting recovery of such damages, even where they are not recoverable under the forum state's wrongful-death statute.[24]  The court rejects defendant's completely unsupported statement, which conflicts with this caselaw, that "[h]edonic damages are not among those authorized by *Berry*."[25]  To the extent Kansas law is to the contrary, *Berry* makes clear it does not apply in this § 1983 death case.[26]  The court **denies** defendant's motion to exclude evidence of hedonic damages.

---

[23] *Berry,* 900 F.2d at 1507.

[24] *See Millward v. Bd. of Cty. Comm'rs*, No. 17-CV-0117, 2018 WL 9371674, at *4 (D. Wyo. Oct. 19, 2018) ("[H]edonic damages are recoverable and therefore testimony regarding the concept of hedonic damages is relevant under [§ 1983 claims]."); *Fancher v. Barrientos,* No. 2:11-cv-00118-JAP-LAM, 2015 WL 11142939, at *2 n.4 & *3 (D.N.M. July 1, 2015) ("Hedonic damages are recoverable in § 1983 wrongful death cases.").  *See also Collado v. City of New York*, 396 F. Supp. 3d 265, 279 (S.D.N.Y. 2019) (citing *Berry* with approval in allowing recovery of hedonic damages on behalf of decedent fatally shot by police officer and stating, "A holding that § 1983 does not allow the recovery of loss-of-life damages where the unconstitutional conduct of a government official results in death would be inconsistent with the goals of the statute"); *Sanchez v. Jiles,* No. CV 10-09384 MMM (OPX), 2013 WL 12242051, at *2 & n.11 (C.D. Cal. Jan. 2, 2013) (allowing hedonic damages for Fourth Amendment claim; citing *Berry* and finding "persuasive the line of cases that have concluded it would be inconsistent with the remedial purposes of § 1983 to bar recovery of damages for pain, suffering, and loss of enjoyment of life").

[25] ECF No. 272 at 2.

[26] The case relied on by defendant, *Sullivan v. U.S. Gypsum Co*., 862 F. Supp. 317, 320 (D. Kan. 1994), is inapposite because it applied Kansas law in a product's liability case

To the extent defendant moves to exclude evidence regarding Mr. Smart's loss of consortium under Kansas law, the motion is **denied as moot**.  Plaintiff's proposed jury instructions make clear plaintiff is not seeking damages for loss of consortium.[27]

4.  Testimony of Seth Collins

Finally, defendant asks the court to exclude testimony from Seth Collins, a person first identified by plaintiff as a trial witness on September 11, 2020, in an amended Fed. R. Civ. P. 26(a)(3)(A) final witness and exhibit list.[28]  Mr. Collins was not included in plaintiff's Rule 26(a)(1) initial disclosures or a supplement thereto.  And in response to an interrogatory asking plaintiff to identify the unnamed witness or witnesses alleged in the amended complaint to have seen Officer Chaffee shoot Mr. Smart in the back, plaintiff's February 6, 2015 answer did not identify Mr. Collins.[29]  Based on these two omissions,

---

alleging strict liability and negligence.  *Sullivan* did not involve a § 1983 claim, nor did it address *Berry*'s holding regarding the remedies available in § 1983 death cases.

[27] ECF No. 276 at 6.  The statement in the pretrial order regarding damages sought for "loss of society, comfort, and companionship" (ECF No. 184 at 12) appears to reference damages sought by Mr. Smart's heirs, who are now proceeding with their claims in state court after this court declined to exercise supplemental jurisdiction.  Of course, should the unexpected happen and plaintiff attempt to introduce evidence about Mr. Smart's loss of consortium, the court would exclude such evidence as irrelevant.

[28] *See* ECF No. 243.

[29] *See* ECF No. 260-2 at 1-2.  Plaintiff identified only DeShawn Wheaton, Aundreas Wilson, and Rolando Miller.  *Id.*

defendant moves the court to apply Fed. R. Civ. P. 37(c)(1) and preclude plaintiff from

calling Mr. Collins to testify at trial.[30]

> Rule 37(c)(1) provides,
>
> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

The undersigned reminded the parties about the dictates of Rule 37 in the June 19, 2020

trial-scheduling order, stating,

> The parties should bear in mind that seldom should anything be included in the final Rule 26(a)(3)(A) disclosures that has not previously appeared in the initial Rule 26(a)(1) disclosures or a timely Rule 26(e) supplement thereto; otherwise, the witness or exhibit probably will be excluded at trial. See Fed. R. Civ. P. 37(c)(1).[31]

The Tenth Circuit has ruled that, although Rule 37(c)(1) gives the district court

discretion in whether or what sanctions should apply when disclosure of a witness is

---

[30] Defendant filed an objection to plaintiff's final witness and exhibit list based on plaintiff's inclusion of Mr. Collins.  ECF No. 246 at 2 ("Collins was not included in any of plaintiffs' Rule 26 disclosures.  Plaintiffs noticed the deposition of Collins and subpoenaed him for deposition on May 19, 2015 (ECF 57). Collins did not appear, and plaintiffs did not add Collins to their Rule 26 disclosures. Otherwise, defendant would have attempted to depose Collins.").

[31] ECF No. 230 at 4.

O:\Trial\14-2111_Smart v. City of Wichita\-260, 261 MIL order.docx

untimely, "the district court's discretion in this type of situation" must be guided by the four factors identified in *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[32] After applying these factors, the court will not preclude plaintiff from calling Mr. Collins as a witness.

Plaintiff asserts its late identification of Mr. Collins was due to an oversight by its counsel and should be excused as harmless.  Under the first factor, plaintiff argues defendant cannot claim to be prejudiced or surprised that plaintiff seeks to call Mr. Collins as a witness.  Both plaintiff and defendant learned Mr. Collins was an eyewitness to the shooting on April 16, 2015, during the deposition of DeShawn Wheaton.[33]  Plaintiff contends defendant was prepared for Mr. Collins to be listed by plaintiff, as demonstrated by defendant's listing of Mr. Collins's criminal records on defendant's exhibit list (filed before plaintiff's witness list).  Defendant counters that he had no duty to interview or attempt to depose a probable adverse witness whom plaintiff did not identify.  Rather, he was entitled to assume plaintiff had elected not to call Mr. Collins.  Defendant states he is prejudiced by the late disclosure because (1) discovery has closed and (2) Mr. Collins's

---

[32] *Guerrero v. Meadows*, 646 F. App'x 597, 599 (10th Cir. 2016) (quoting *Woodworker's Supply*, 170 F.3d 985, 993 (10th Cir.1999)).

[33] *See* ECF No. 260-3 at 42:10-16, 44:9-13.

memory could have been influenced by the passage of time and by his meetings with plaintiff's investigator.[34]

There can be no doubt that "defendants are not obligated to interview every potential witness, but instead are entitled to rely on Plaintiffs, who have the burden of proof, to set forth those witnesses they intend to call to satisfy their burden and then respond accordingly."[35]  Nonetheless, given the relatively few people who witnessed the final shots in this case, as well as the identification of Mr. Collins by Mr. Wheaton in 2015, it would be a stretch to find his identification as a trial witness surprising.  On the other hand, defendant makes a valid point that the passage of time and events that have occurred since 2015 could potentially influence Mr. Collins's testimony, thereby prejudicing defendant. This factor is a wash.

Under the second factor, the court considers the ability of defendant to cure the prejudice.  As defendant notes, the passage of time can impact one's recollection of a situation, and there is no cure for this.  Had plaintiff listed Mr. Collins as a witness in 2015 when his identity became known, he could have been deposed five years ago.  But because trial is not scheduled to begin until August 2021,[36] there is time to allow defendant to

---

[34] ECF No. 260 at 10.

[35] *Guerrero*, 646 F. App'x at 600 (internal quotation and citation omitted).

[36] After submission of the instant motions, the trial was postponed due to the current COVID-19 pandemic.  ECF No. 265.

depose Mr. Collins now, to the extent defendant finds it useful.[37]  This factor slightly weighs for defendant.

The third factor, however, favors plaintiff.  Defendant concedes Mr. Collins's testimony is unlikely to disrupt the trial.[38]

Applying the final factor, there is no indication that plaintiff's untimely disclosure was willful or in bad faith.  Plaintiff states, and defendant acknowledges, that plaintiff attempted to depose Mr. Collins before the close of discovery on May 19, 2015, but Mr. Collins did not appear for the deposition.  Plaintiff asserts that his "failure to identify Collins in a disclosure was an oversight and mistake by plaintiff's counsel, but it was not willful or done in bad faith."[39]  Nothing in the record disputes this representation.  Thus, this factor favors plaintiff.

It truly is unfortunate that Mr. Collins was not timely identified as a trial witness. But after considering the circumstances here in the context of the *Woodworker's Supply* factors, the court will permit plaintiff to call Mr. Collins at trial.  The court will not preclude defense counsel from addressing on cross-examination Mr. Collins's late disclosure or discussions with plaintiff's investigators.  Moreover, defendant is granted leave to depose Mr. Collins up to 30 days before trial begins, with attorney's fees associated with any such

---

[37] The parties note defense counsel had an opportunity to question Mr. Collins on November 6, 2020, during his deposition in the related state case.

[38] ECF No. 260 at 10.

[39] ECF No. 271 at 9.

O:\Trial\14-2111_Smart v. City of Wichita\-260, 261 MIL order.docx

deposition to be reimbursed by plaintiff.  Defendant's limine request to exclude Mr. Collins is **denied**.

## V.      Plaintiff's Motion in Limine (ECF No. 261)

Plaintiff filed a limine motion asking the court to exclude reference to and evidence about 22 topics.  Defendant does not oppose nine of plaintiff's requests.  By agreement of the parties (and subject to unanticipated changes at trial that could open the door to admission of such evidence), the parties, their counsel, and witnesses are precluded from referencing or presenting evidence about the following: (1) defendant's financial status and/or ability to pay a judgment; (2) criminal-law standards; (3) conclusions or opinions of the Sedgwick County District Attorney's Office; (4) when plaintiff first consulted counsel or filed suit; (5) comparison of fault; (6) so-called "lottery" references; (7) statements appealing to the jury's self-interest; and (8) derogatory comments about plaintiff's use of the legal system and/or its counsel's intentions.  In addition, the parties agree that plaintiff may treat Detective Rick Craig as an adverse witness.  The court addresses the remaining, opposed requests in turn.  These requests are granted in part and denied in part.

### 1.      Evidence of Mr. Smart's Past Conduct

Plaintiff argues evidence about Mr. Smart's past conduct, including criminal conduct, should be excluded from trial because it is not relevant to the issue of whether Officer Chaffee's use of force was reasonable.  Plaintiff notes Officer Chaffe did not know

17

Mr. Smart or view him as a threat before the night of the shooting.  Defendant counters that evidence of Mr. Smart's past conduct could be relevant to plaintiff's claim for damages and to help the jury evaluate Mr. Smart's conduct on the night in question.  At this point, the motion is **denied**.  Without the context of trial and knowing how such evidence might be offered, the court does not have enough information to make a definitive ruling excluding it.

> 2.  <u>Evidence of Mr. Smart's Alleged Gang Affiliation</u>

Plaintiff seeks to exclude evidence that would link Mr. Smart to a gang, such as reference to Mr. Smart's tattoos.  In support, plaintiff notes evidence in the record that indicates Mr. Smart was not in a gang (such as his absence in the WPD gang database).  Plaintiff argues evidence of gang affiliation is not relevant to the actions of police officers on the night of the shooting, particularly since Officer Chaffee did not know Smart previously.  Plaintiff further asserts any such evidence is more prejudicial than probative, but does not explain this assertion or offer a case citation in support.

Defendant asserts in response that evidence of Mr. Smart's gang affiliation is relevant to his "character, conduct and his claim of damages."[40]  Defendant argues that if plaintiff attempts to build Mr. Smart's character through testimony, defendant is entitled to attempt to impeach such testimony with evidence of gang affiliation.

---

[40] ECF No. 270 at 3.

Because the admissibility of this evidence will depend upon what facts are developed at trial, this portion of the motion is **denied** but without prejudice to plaintiff asserting objections at trial based on specific questions and testimony offered.  If such evidence ultimately is admitted, plaintiff's counsel may, of course, address in cross-examination the lack of evidence tying Mr. Smart to a gang.

### 3.    Cross-examination Should Not Go Beyond Direct Examination

Plaintiff cites Fed. R. Evid. 611(b) to ask the court to order that cross-examination not go beyond the scope of direct examination.  Although generally cross-examination "should not go beyond the subject matter of the direct examination," the court has discretion to "allow inquiry into additional matters as if on direct examination."[41]  For those witnesses both sides plan to use, in the interest of efficiency and to avoid having the same witness (especially a non-party witness) testify twice during trial, the court will allow defendant's questioning to exceed the scope of direct examination.  But when cross-examination exceeds the scope of direct examination, only non-leading questions will be allowed.  And, should scheduling constraints later make it necessary to divide trial time between the parties, the time for questioning beyond the scope of direct examination will be charged against defendant.  This portion of plaintiff's motion is **denied**.

---

[41] Fed. R. Evid. 611(b).

O:\Trial\14-2111_Smart v. City of Wichita\-260, 261 MIL order.docx

4.    Evidence of Rashayla Hamilton's Alleged Comment

Plaintiff next asks the court to exclude defendant from presenting any evidence indicating Rashayla Hamilton told Detective Mumma that the person who shot her was dead.  Plaintiff has reserved the right to call Ms. Hamilton as a witness at trial, presumably "live,"[42] and by deposition if she's unavailable.[43]

The parties' arguments on this topic are muddled.  The court has reviewed the deposition testimony designated by plaintiff, and counter-designated by defendant.[44]  Ms. Hamilton denies under oath having implied, if not stated outright, to Detective Mumma during an interview that it was Mr. Smart who fired a shot and injured her at the time in question.  It's not exactly clear how this alleged comment would be presented at trial, but conceivably it might come through testimony of Detective Mumma, or perhaps a recorded or signed statement of some kind.

In any event, plaintiff asserts the above-described comment should be excluded as hearsay under Fed. R. Evid. 801.  Defendant responds that the statement is not hearsay under Fed. R. Evid. 801(d)(1)(C) because it identifies Mr. Smart as someone Ms. Hamilton perceived earlier.  Alternately, defendant asserts the statement falls under an exception to

---

[42] ECF No. 243 at 2.

[43] ECF No. 249 at 1.

[44] ECF No. 252 at 2.

20

the hearsay rule because it was a present sense impression or an excited utterance under Fed. R. Evid. 803(1) or (2).

Before ruling on the merits of the parties' respective positions, the court can't resist observing this all probably will be moot at trial. Under the fairly relaxed standards of Fed. R. Evid. 601 and Fed. R. Evid. 602, perhaps Ms. Hamilton is a competent witness with personal knowledge of the shooting incident at issue in this case. However, when she was deposed, she admitted being "highly intoxicated" at the time in question and that "the whole night was a blur." So even assuming for the sake of abstract discussion that she's a competent witness, the court has some concerns whether her testimony shouldn't be excluded under Rule 403, i.e., as inherently confusing and a complete waste of the jury's time. And regardless of these *legal* issues, the court questions whether it really makes any *practical* sense for plaintiff's experienced trial lawyers to call her as a witness.

If plaintiff persists, the court is not prepared to preclude reference to Ms. Hamilton's alleged statement without the context of trial. Under Rule 801(d)(1)(C), a statement is defined as "not hearsay" if the "declarant testifies and is subject to cross examination about a prior statement, and the statement . . . identifies a person as someone the declarant perceived earlier." If Rule 801(d)(1)(C) is not satisfied and defendant offers the alleged statement for the truth of the matter, the statement is hearsay.[45] The court then will evaluate

_____

[45] Fed. R. Evid. 801(c) (defining hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement").

whether it meets one of the asserted exceptions to the hearsay rule.  The court is wholly unpersuaded by the deposition designations submitted that the statement (alleged to have been made "within hours of the shooting"[46]) is an excited utterance or a present sense impression.  The court **denies** plaintiff's request to exclude evidence of the statement in advance of trial.[47]

### 5. Evidence of Mr. Smart's Consumption of Drugs or Alcohol

Defendant has indicated his intent to offer evidence at trial that chemical testing of Mr. Smart's body "established that Smart was intoxicated both with alcohol and marijuana."[48]  Defendant argues such evidence is relevant to the claim that Mr. Smart suffered conscious pain and suffering, and also to fact questions of how Mr. Smart acted on the night he was shot.  Plaintiff asks the court to exclude evidence of intoxication as irrelevant and testimony about any alleged effect of such intoxication as speculative. Plaintiff argues no expert witness has been designated to opine on whether alcohol or drugs in Mr. Smart's body affected his feelings of pain upon being shot.  Plaintiff also notes there has been no testimony to date that Mr. Smart's conduct was influenced by intoxication.

---

[46] ECF No. 270 at 4.

[47] In its reply brief, plaintiff argues for the first time that Ms. Hamilton's statement about who shot her is both irrelevant and unreliable.  Although the court will not consider arguments raised for the first time in reply briefs, plaintiff may object at trial to the admissibility of such evidence on any ground.

[48] ECF No. 270 at 4.

O:\Trial\14-2111_Smart v. City of Wichita\-260, 261 MIL order.docx

Plaintiff contends "any evidence of alcohol or drugs in Marquez Smart's system is far more prejudicial than probative."[49]

The court is unpersuaded at this time that evidence of Mr. Smart's use of alcohol and drugs on the night he was shot is clearly irrelevant.  The court finds it likely, depending on what specific evidence is offered at trial, that evidence of Mr. Smart's intoxication could aid the jury in its determination of damages arising from Mr. Smart's alleged pain and suffering.  Plaintiff has cited no caselaw indicating expert testimony is necessary to help the jury understand the effects of alcohol and/or drug use on a person's experience of pain. Whether intoxication dulls feelings of pain is likely to be a matter of common knowledge.[50] It's also possible that the presence of alcohol and marijuana in Mr. Smart's system will be relevant if a dispute arises at trial as to how Mr. Smart conducted himself on the night of the event.  Courts have held that a decedent's intoxication is not relevant to whether an officer's deadly use of force is objectively reasonable if the officer was not aware of the intoxication at the time of the final shots (which defendant concedes here), but may be relevant if the decedent's pre-shooting conduct is disputed and evidence of intoxication

---

[49] ECF No. 273 at 2.

[50] *See*, e.g., *Solis-Marrufo v. Bd. of Comm'rs*, No. CIV 11-0107 JB/KBM, 2013 WL 1658203, at *18 (D.N.M. Mar. 28, 2013) (rejecting argument that expert testimony was required "regarding the effect of cocaine on a person's memory, and how much cocaine is required to negatively affect a person's ability to perceive and recall events" before evidence of cocaine use was admitted).

supports the defendant's version of the events (which is unclear here).[51]  Without the context of trial, the court is unable to determine whether evidence of Mr. Smart's intoxication is relevant.

Assuming the court does find the evidence relevant, the court is not persuaded it is *unduly* prejudicial in that it "*substantially* outweighs" its probative value.[52]  Defendant certainly will not be permitted to offer evidence of intoxication for the purpose of arousing the jury's sentiment against Mr. Smart.[53]  At this time, plaintiff has not met its burden of demonstrating that this is a situation in which the "extraordinary remedy" of Rule 403 should be applied.[54]  Plaintiff's motion is **denied** as to this category of evidence.

---

[51] *See, e.g., Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232–33 (9th Cir. 2013) (refusing to consider suspect's intoxication in determining whether deputies' use of deadly force was objectively reasonable where deputies were not aware of intoxication); *Castro v. Cnty. of Los Angeles*, No. 213CV06631CASSSX, 2015 WL 4694070, at *5-6 (C.D. Cal. Aug. 3, 2015) (allowing evidence of intoxication to corroborate officer's contention that decedent "made the irrational decision to flee and point a gun at him"); *Burke v. City of Santa Monica*, No. CV0902259MMMPLAX, 2011 WL 13213593, at *3 (C.D. Cal. Jan. 10, 2011) (finding evidence of intoxication not relevant in excessive-force case where officers were unaware of the intoxication at the time force was used).

[52] *Smalls*, 605 F.3d at 787 (emphasis in original).

[53] *Cf. Meller v. Heil Co.*, 745 F.2d 1297, 1303 (10th Cir. 1984) (affirming exclusion of hashish pipes at trial which appeared to be introduced "for the specific purpose of arousing juror sentiment against the decedent").

[54] *Smalls*, 605 F.3d at 787.

24

6.  Reference to the Dismissal of The City and Officer Froese

Plaintiff asserts the dismissals of claims against the City and Officer Froese are irrelevant to the questions before the jury, such that reference to those dismissals should be excluded.  Defendant counters that the jury should be informed about the dismissal of claims so that it has the proper context to decide the remaining issues.  Defendant further asserts "evidence that certain claims have been dismissed will be relevant to impeach opinions of plaintiff's law enforcement expert witnesses."[55]

As the court mentioned during the November 19, 2020 telephone status conference with counsel, it will be next to impossible to exclude at trial all reference to the fact that the City and Officer Froese were once parties in this action, particularly given the way questions were framed in the deposition testimony that each side has designated for presentation at trial.  For example, there are numerous references to "defendants" in the plural form, and there are instances in which Officer Froese is referred to as a "defendant" by either the deponent or counsel asking the questions.

Even if there was some way to sanitize the record at this point, the court believes the procedural background of this case – on a *very* generalized level – is relevant to avoid juror confusion.  The court will not permit defendant to state or imply (by argument or evidence) that the remaining claim is of questionable merit based on the dismissals of other claims or parties.  Because the court anticipates there will be evidence reflecting some of

---

[55] ECF No. 270 at 4.

25

the actions taken by Officer Froese in the minutes before the shooting and by the City (through the WPD) in investigating the shooting, which could lead a juror to question the absence of claims against them, the court intends to give a preliminary and final instruction in this regard.  Specifically, the court contemplates a jury instruction generally stating that all claims against these parties already have been "resolved" by the court and that none of those claims have any bearing on the jury's decision.  This seems to be the most appropriate way to address this situation.[56]  This limine request is **denied**.

### 7.   Officer Chaffee's Subjective Opinions, Beliefs, or Conjectures

Next, plaintiff asks the court to prohibit Officer Chaffee from testifying about his subjective belief that he acted reasonably or was justified in shooting Mr. Smart.  Plaintiff asserts such testimony is irrelevant and should be excluded under Rule 402.  The court agrees.  As was discussed above, the jury will be instructed to evaluate Officer Chaffee's actions under the standard of an objectively reasonable officer.[57]  Under this standard, an officer's subjective *conclusion* that a suspect is a threat (and that the use of force is thus justified) is not relevant, and the officer's testimony in that regard should be excluded.[58]

---

[56] The parties have filed competing jury instructions on this issue, ECF Nos. 274 & 276, which the court will address in a separate order.

[57] *See Cavanaugh v. Woods Cross City,* 718 F.3d 1244, 1248 (10th Cir. 2013) ("Whether the force used by police officers is 'excessive' or 'reasonable' is an objective inquiry depending on the 'facts and circumstances of each particular case.'" (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989))).

[58] *See id.* at 1249.

O:\Trial\14-2111_Smart v. City of Wichita\-260, 261 MIL order.docx

The Tenth Circuit addressed this situation in *Cavanaugh v. Woods Cross City*.[59]  There, the district court permitted, over plaintiff's objection, testimony from the defendant-officer that, based on the facts as he perceived them, he concluded plaintiff was a threat and used force to stop her.[60]  The Tenth Circuit criticized the admission of the officer's testimony about "why he employed force," noting "the jury may be tempted to excuse a constitutional violation if it appears the officer did so in good faith."[61]  The Circuit agreed with plaintiff that such testimony of the officer's "subjective mind state" should have been excluded.[62]  Plaintiff's motion to exclude Officer Chaffee's subjective opinions, therefore, is **granted**.

To be clear, though, the court is not interpreting plaintiff's motion as seeking to prohibit Officer Chaffee from testifying as to his perceptions of the facts.  As defendant

---

[59] *Id.*

[60] *Id.* ("On direct examination, the Defendants' attorney asked Officer Davis why he wanted to stop Mrs. Cavanaugh from entering the house.  Officer Davis responded, 'I knew that she had been involved in a domestic fight with her husband.  I knew that she had pushed him.  I knew that she had left with a knife, and I knew that she was going to be upset ... because we were going to be there.'  App. 541.  Davis continued, 'And I felt the best thing to do would be to stop her before she could get into the house for either her to kill herself, for her to get in a fight, continue the fight with him, or something even worse to happen.'").

[61] *Id.* at 1250.  The Tenth Circuit noted that defendants had "alternative ways to ensure the jury connected the dots from the objective facts to the conclusion that force was warranted." *Id.*

[62] *Id*. at 1249.  Despite finding the admission of such testimony inappropriate, the Court ultimately held "any error the district court committed in denying [plaintiff's] motion to exclude was harmless" because the district court "cured any possible error by properly instructing the jury that the standard was 'objective' and did not depend on the officer's subjective motivations."  *Id.* at 1250.

asserts, and plaintiff appears to concede,[63] Officer Chaffee's perceptions of the facts are relevant to the jury's reasonableness evaluation.[64] "An officer may be found to have acted reasonably even if he has a mistaken belief as to the facts establishing the existence of exigent circumstances."[65] Officer Chaffee's testimony about his perceptions of the facts will be relevant to the jury's determination of whether those perceptions were correct, and if they are deemed mistaken, whether they were nonetheless reasonable.[66] Thus, Officer Chaffee may testify about what he perceived, but without opining that, because of those perceptions, his actions were reasonable or justified.

8.  Evidence that Officer Chaffee Acted in Compliance with his Training or WPD Policies or Procedures

Plaintiff also moves to exclude reference or evidence that Officer Chaffee acted in compliance with his training or with the WPD's policies and procedures. Plaintiff asserts such testimony is not relevant and would confuse the jury. As noted above, the jury must

---

[63] ECF No. 273 at 3 ("Officer Chaffee is of course permitted to testify about what he saw . . . .").

[64] *See, e.g., Finch,* 2020 WL 3403121, at *24 ("That factual predicate is the basis on which the reasonableness of the officer's actions is judged."); *Boyd,* 576 F.3d at 944 ("In a case such as this, where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible."). *See also Cavanaugh,* 718 F.3d at 1249-50 (recognizing the officer could testify about what he knew before using force).

[65] *Estate of Smart,* 951 F.3d at 1171 (quoting *Thomas v. Durastanti,* 607 F.3d 655, 666 (10th Cir. 2010)).

[66] *See, e.g., id.* ("The salient question is whether the officers' mistaken perceptions that Mr. Smart was the shooter were reasonable.").

determine whether Officer Chaffee's actions were objectively reasonable, not whether they complied with WPD policies or training.

The Tenth Circuit has recognized that *violations* of general law-enforcement standards or of police-department regulations are insufficient to establish liability under § 1983 for excessive force.[67]  An officer may violate local or generally accepted police procedures, but "the jury could nonetheless find he acted reasonably."[68]  For this reason, in *Marquez v. City of Albuquerque,* the Tenth Circuit found it was not an abuse of discretion for the district court to exclude testimony that an officer's actions "violated well established law enforcement standards."[69]  The Circuit agreed such testimony was "both irrelevant and confusing on the ground that violation of such standards is not *ipso facto* a Fourth Amendment violation."[70]  Under this law, the court earlier ruled that plaintiff's expert on police policy and procedures, Michael D. Lyman, is precluded from testifying that Officer Chaffee violated WPD policy.[71]

---

[67] *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005); *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001); *Romero v. Bd. of Cty. Comm'rs*, 60 F.3d 702, 705 (10th Cir. 1995).

[68] *Marquez*, 399 F.3d at 1222.

[69] *Id.*

[70] *Id.; see also Ornelas v. Lovewell*, No. 11-2261-JAR, 2013 WL 3271016, at *7 (D. Kan. June 27, 2013) (excluding as irrelevant to the Fourth Amendment inquiry expert testimony that defendant-officer did not follow police department guidelines or generally accepted policy and training).

[71] *Estate of Smart v. City of Wichita*, No. 14-2111-JPO, 2020 WL 3618850, at *5 (D. Kan. July 2, 2020) (ECF No. 234).  The court permitted, however, Mr. Lyman's "testimony on accepted police standards and how, in his opinion, they apply to the facts

O:\Trial\14-2111_Smart v. City of Wichita\-260, 261 MIL order.docx

Plaintiff argues that officer *conformity* with police policies likewise is not relevant to the Fourth Amendment reasonableness inquiry.  U.S. District Judge John W. Broomes recently reached this conclusion in *Finch v. City of Wichita*: "whether [the officer's] actions were *consistent* with departmental policies is not an issue the jury must decide, and having an expert focus on and render opinions about policy compliance runs the risk of confusing the jury about the standards by which they must decide whether [the officer's] actions violated the Fourth Amendment."[72]  Defendant appears to concede that, consistent with *Finch*, evidence and argument that Officer Chaffee complied with WPD policies and training is not relevant.  The court agrees such evidence does not reflect on the Fourth Amendment inquiry.  Accordingly, plaintiff's motion is **granted** in this regard.

In reaching this conclusion, however, the court is *not* prohibiting evidence of *what* WPD procedure was or *how* Officer Chaffee was trained.  The court does not read plaintiff's motion to be seeking such restrictions, and, in any event, the court finds such

---

presented in this case. The court finds such opinion testimony could be useful to the jury in determining whether, under the facts presented, the officers acted in accordance with how a reasonable officer on the scene would have acted." *Id.*

[72] No. 18-1018-JWB, 2020 WL 3403121, at *23 (D. Kan. June 19, 2020) (emphasis added); *see also id.* at *25 ("As indicated previously, expert testimony about whether the officers' actions complied with WPD policies is both unnecessary and potentially confusing. The jury is to determine whether the use of force was reasonable under constitutional standards, and Plaintiffs have not shown that expert testimony concerning policy compliance would be helpful in that inquiry.").

O:\Trial\14-2111_Smart v. City of Wichita\-260, 261 MIL order.docx

evidence could be useful to the jury in determining whether Officer Chaffee acted in accordance with an objectively reasonable officer on the scene.

9.      Reference to Interactions of Mr. Smart's Parents with the WPD

Without any indication of what evidence plaintiff has in mind, it moves to exclude as irrelevant any reference to communications or interactions between Mr. Smart's parents (who are the administrators of his estate) and the WPD.  This abstract request is simply too vague for the court to exclude evidence without the context of how it is offered at trial.  This portion of plaintiff's motion is **denied**.

10.     Expert Testimony of John J. Ryan on the So-Called "Reactionary Gap"

Next, plaintiff raises a *Daubert* challenge[73] to any testimony that would be offered by defendant's expert, John J. Ryan, on "reactionary gap"—that is, the alleged delay between the abatement of a threat, an officer's perception of the abatement, and the officer's reaction to stop firing his weapon.  Plaintiff asserts Mr. Ryan is not qualified (by education, experience, or otherwise) to offer opinions on this topic.

Defendant argues plaintiff's *Daubert* objection is untimely, and plaintiff's motion should be denied on this basis.  The deadline for "[a]ll motions to exclude testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137

---

[73] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

31

(1999), or similar case law" expired more than two years ago, on April 30, 2018.[74]  Plaintiff

did not seek to exclude Mr. Ryan's testimony by that deadline.  Plaintiff also has not

attempted to explain the lateness of its motion.  Defendant designated Mr. Ryan as an

expert on June 14, 2017, stating he would testify "consistently with his report."[75]   Mr.

Ryan's report (dated June 14, 2017) sets out his opinions related to reactionary gap.[76]  Thus,

plaintiff clearly had the opportunity to file his *Daubert* motion to exclude Mr. Ryan's

testimony as unreliable on reactionary gap before the April 2018 deadline.  Plaintiff further

had a chance to seek another opportunity to challenge the basis of Mr. Ryan's reactionary-

gap opinions after the Tenth Circuit remanded the case on February 26, 2020,[77] but plaintiff

again failed to act.  At the June 19, 2020 trial-scheduling conference, the court addressed

*Daubert* briefs and plaintiff made no request to file a motion regarding Mr. Ryan.[78]   The

---

[74] ECF No. 184 at 14.

[75] ECF No. 127 at 2.

[76] ECF No. 261-2 at 36-40.  Plaintiff's statement in the present motion that Mr. Ryan "was not designated to testify on the 'reactionary gap,'" ECF No. 261 at 7, is not correct.

[77] The Tenth Circuit recognized the potential relevance of Mr. Ryan's reactionary-gap opinions. *Estate of Smart,* 951 F.3d at 1177 ("If Officer Chaffee shot Mr. Smart even though in retrospect Mr. Smart no longer posed a threat, a jury might still conclude that Officer Chaffee acted reasonably: there might not have been enough time for Officer Chaffee to safely conclude that Mr. Smart posed no further threat.").

[78] *See* ECF No. 230 at 3.

court therefore agrees with defendant that plaintiff has waived his *Daubert* objection to Mr.

Ryan's testimony, and **denies** this portion of plaintiff's motion on this basis.[79]

Even if the court were to decide plaintiff's objection on its merits, however, the

court would conclude Mr. Ryan is qualified to offer his opinions on reaction time.  Fed. R.

Evid. 702 governs the admissibility of expert testimony:[80]

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will
>> help the trier of fact to understand the evidence or to determine a fact in
>> issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts
>> of the case.

---

[79] *See Questar Pipeline Co. v. Grynberg,* 201 F.3d 1277, 1289-90 (10th Cir. 2000) ("A party may waive the right to object to evidence on *Kumho/Daubert* grounds by failing to make its objection in a timely manner."); *Praseuth v. Newell-Rubbermaid, Inc.,* 219 F. Supp. 2d 1157, 1162 (D. Kan. 2002) (holding, in ruling on summary judgment, party waived right to challenge expert on *Daubert* grounds when it did not file a motion by the scheduling-order deadline); *Morrison Knudsen Corp. v. Ground Improvement Techs., Inc.,* No. CIV.A. 95-K-2510, 2006 WL 753207, at *1 (D. Colo. Mar. 20, 2006) (ruling on motion in limine and finding *Daubert* motion waived because not filed by scheduling-order deadline); *Ennis v. Anthem*, No. CIV-13-33-F, 2014 WL 12102172, at *1 (W.D. Okla. Jan. 22, 2014) (holding motion in limine that sought *Daubert* relief was untimely under scheduling order and therefore waived); *Dennis v. Progressive N. Ins. Co.*, No. CIV-17-182-SLP, 2018 WL 3489317, at *8 (W.D. Okla. Apr. 9, 2018) (denying motion in limine to exclude expert testimony as untimely under scheduling-order deadline for *Daubert* motions); *but see Alfred v. Caterpillar, Inc.,* 262 F.3d 1083, 1087 (10th Cir. 2001) ("leaving for another day further development of . . . timing jurisprudence" for waiver of *Daubert*-based objections).

[80] *Hoffman v. Ford Motor Co.*, 493 F. App'x 962, 972 (10th Cir. 2012) (citing *United States v. Call*, 129 F.3d 1402, 1404 (10th Cir. 1997)).

From this rule, the Tenth Circuit has developed a gatekeeping test for trial courts to apply in considering the admissibility of proposed expert testimony. First, the court must decide "whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[81]  Second, the court "'must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact.'"[82]  "To be reliable, the opinions must be within the witness's area of expertise, be based on facts and data reasonably relied on by experts in the field (Rule 104(a)), and not be speculative or mere guesswork."[83]  To be relevant, the opinions "must assist the fact-finder in understanding the evidence or determining a fact in issue."[84]  The court has wide discretion in deciding whether to admit expert testimony[85] and is mindful that exclusion of expert testimony should be "the exception, not the rule."[86]

Applying these standards, the court finds Mr. Ryan's proposed expert testimony admissible. First, Mr. Ryan's experience qualifies him to render an opinion on reactionary

---

[81] *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting Fed. R. Evid. 702)).

[82] *Id.* (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)).

[83] *Richard v. Hinshaw*, No. 09-1278-MLB, 2013 WL 6632122, at *2 (D. Kan. Dec. 17, 2013).

[84] *Hoffman*, 493 F. App'x at 975 (citing *Daubert,* 509 U.S. at 591).

[85] *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (citing *Orth v. Emerson Elec. Co., White-Rodgers Div.*, 980 F.2d 632, 637 (10th Cir. 1992)).

[86] *United States v. Reulet*, No. 14-40005-DDC, 2015 WL 7776876, at *2 (D. Kan. Dec. 2, 2015) (quoting Advisory Committee Notes to Fed. R. Evid. 702).

gap.  In training police officers nationwide, Mr. Ryan has conducted reaction-time firearms training more than 100 times.[87]  This training sometimes involved asking police officers to stop shooting at a target when a simulated threat was removed, such as the target being turned sideways to the shooting officer.[88]  Other times, Mr. Ryan used a computer simulator to measure an officer-trainee's delay in stopping shooting in response to a generated scenario.[89]

Second, Mr. Ryan's opinions on reaction time are reliable.  They are within Mr. Ryan's area of expertise as a police-practices trainer and, as noted above, are based on the results of firearms training Mr. Ryan conducted, not speculative guesswork.  Although Mr. Ryan has not published a peer-reviewed article on reaction times, his report does cite scholarly articles on this subject that are consistent with his opinions.[90]

Finally, Mr. Ryan's opinions on reaction time are relevant because they will assist the jury in determining the reasonableness of Officer Chaffee's final shots.[91]  A lay person

---

[87] ECF No. 270-2 at 3.  More generally, Mr. Ryan has extensive education, training, and employment in police practices.  *See* ECF No. 261-1 (Ryan Curriculum Vitae indicating 20-year employment as police officer (including time as a police captain), 10-year employment as a professor in a "administration of justice" graduate program, numerous publications, and numerous police-training-conference presentations).

[88] ECF No. 270-2 at 3, 8.

[89] *Id.* at 3.

[90] ECF No. 261-2 at 38 n.7-8, 39 n.9-10.

[91] *See Estate of Smart,* 951 F.3d at 1177 ("If Officer Chaffee shot Mr. Smart even though in retrospect Mr. Smart no longer posed a threat, a jury might still conclude that

typically would not have experience or knowledge about the time it takes an officer to react to a perceived threat or the absence of a perceived threat.

An exception to the general rule that expert testimony should be admitted has not been demonstrated here.  If plaintiff takes issue with Mr. Ryan's qualifications or the accuracy of his findings, it may address these issues through "vigorous cross-examination" or through the "presentation of contrary evidence" to show any weakness in his conclusions.[92]

It bears mentioning that plaintiff asks the court to exclude at trial an article co-authored by William Lewinski if there is no "qualified expert to testify on the 'reactionary gap' or to explain the article's methodology."[93]  According to plaintiff, Mr. Lewinski is not qualified to opine on reactionary gap.  The court reserves ruling on this objection outside the context of trial.  It is unclear whether this article will be offered into evidence and, if

---

Officer Chaffee acted reasonably: there might not have been enough time for Officer Chaffee to safely conclude that Mr. Smart posed no further threat.").

[92] *Daubert*, 509 U.S. at 596.  In its reply brief, plaintiff argues for the first time that Mr. Ryan's opinions on reactionary gap are irrelevant because defendant does not claim "he fired the final shots after he should have stopped but was unable because of some reasonable delay time."  ECF No. 273 at 3.  This argument is more than just a bit odd because it directly contradicts the statement in plaintiff's opening brief that "[o]ne of defendant's chief legal defenses will be that Officer Chaffee did not have sufficient time to register that Smart was no longer a threat before shooting him."  ECF No. 261 at 7.  In any event, the court does not consider arguments raised for the first time in reply briefs.

[93] ECF No. 261 at 8.

so, by whom.  The court notes, however, that several courts have deemed Mr. Lewinski's expert opinions on reaction time admissible.[94]

11.     Expert Testimony of John J. Ryan on Whether Defendant Acted Reasonably

Plaintiff also moves to exclude Mr. Ryan's expert opinions that defendant acted "reasonably" in shooting Mr. Smart, as well as testimony that Mr. Smart constituted an "imminent threat" or was "an active shooter" at the time.  Plaintiff argues such opinions invade the province of the jury and misstate the record.

As discussed above, the ultimate legal question the jury will decide in evaluating plaintiff's excessive-force claim is whether Officer Chaffee used "reasonable" force, as defined by Fourth Amendment jurisprudence, in firing the final shots at Mr. Smart.[95] Whether an officer has used excessive force is judged by a standard of "objective reasonableness," which will require the jury to determine whether a "reasonable officer on

---

[94] *See, e.g., Pollard v. City of Columbus*, No. C2-11-CV-0286, 2013 WL 12178115, at *1 (S.D. Ohio Sept. 23, 2013); *ADT Sec. Servs., Inc. v. Swenson*, 276 F.R.D. 278, 318 (D. Minn. 2011); *Lopez v. Chula Vista Police Dep't,* No. 07CV1272-WQH-BLM, 2010 WL 685014, at *2 (S.D. Cal. Feb. 18, 2010); *Humphrey v. Leatherman,* No. 04-CV-0339-HE, 2005 WL 6003555, at *2 (N.D. Okla. Nov. 10, 2005).  *See also Finch,* 2020 WL 3403121, at *24 (permitting testimony of expert who cited Lewinski's study on reaction times).

[95] *See Estate of Smart*, 951 F.3d at 1176-77; *Pauly v. White,* 874 F.3d 1197, 1214-15 (10th Cir. 2017) ("All claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.").

the scene" would have concluded that a threat existed justifying the use of deadly force.[96]

The court agrees that Mr. Ryan's opinions that officers' actions were "reasonable" are legal conclusions that usurp the jury's role by applying the facts to the law.  Defendant has agreed that Mr. Ryan "will not testify regarding 'legal mandates' or that an officer's actions were 'constitutional.'"[97]   Because these "opinions do not assist the trier of fact in understanding the evidence, but rather embrace the ultimate issue," the court will not permit such testimony.[98]  Plaintiff's motion is **granted** in this regard.

Defendant notes that it does intend to offer Mr. Ryan's explanations of police training and protocols on the use of force.  Plaintiff does not take issue with such opinions.  As the court previously ruled in addressing defendant's motion in limine on the testimony of plaintiff's police-procedures expert, Mr. Lyman, "An expert's explanation of police training and protocols on the use of force will assist the lay juror in evaluating evidence

---

[96] *Pauly,* 874 F.3d at 1215; *see also Ornelas*, 2013 WL 3271016, at *6 ("Whether an officer has used excessive force is judged by a standard of objective reasonableness, which requires a jury to determine whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." (internal quotation and citation omitted)).

[97] ECF No. 270 at 9.

[98] *Parker v. Wal-Mart Stores, Inc*., 267 F.R.D. 373, 376 (D. Kan. 2010).  *See also Ornelas*, 2013 WL 3271016, at *7 (excluding expert testimony "as to the ultimate issue in this case—whether [officer's] use of force was excessive or unreasonable"); *Zuchel v. City & Cnty. of Denver*, 997 F.2d 730, 742-43 (10th Cir. 1993) (holding that expert testimony on whether an officer's conduct was "inappropriate" based on generally accepted police custom and practice was admissible, but noting testimony about whether the conduct was "unconstitutional" would not have been permissible).

and deciding whether other officers would have responded as [defendant did] if confronted with the same circumstances."[99]   Thus, the court will allow Mr. Ryan, as it will Mr. Lyman, "to offer testimony on accepted police standards and how, in his opinion, they apply to the facts presented in this case.  The court finds such opinion testimony could be useful to the jury in determining whether, under the facts presented, the officers acted in accordance with how a reasonable officer on the scene would have acted."[100]

> 12.    Reference to the Fact that Richard Ernest was Retained by Plaintiff

If defendant calls Richard Ernest, a forensic ballistics consultant, as a witness, plaintiff asks the court to prohibit reference or evidence about the fact that plaintiff originally retained Mr. Ernest, arguing this fact is irrelevant.  This request is **denied**.  As defendant notes, if plaintiff calls Dr. Wayne Ross, a forensic pathologist and medical examiner, to provide an expert opinion on the trajectory paths of bullets that penetrated Mr. Smart's body and clothing, evidence may come in that Dr. Ross collaborated with Mr. Ernest in placing rods in a mannequin to reflect trajectory-path theories.  Further evidence may be offered that Dr. Ross later modified his rod placement.  The fact that plaintiff retained Mr. Ernest (as well as Dr. Ross) could be relevant to impeach Dr. Ross.

---

[99] ECF No. 234 at 13.

[100] *Id.* at 13-14.

O:\Trial\14-2111_Smart v. City of Wichita\-260, 261 MIL order.docx

13.   <u>Witness Criminal Records</u>

Plaintiff argues "criminal records for witnesses" must be excluded under Fed. R. Evid. 608 or Fed. R. Evid. 609, or as unduly prejudicial under Rule 403.[101]  To the extent plaintiff is seeking the exclusion of witness *arrest* records, the motion is **granted**.  As defendant recognizes, evidence of arrest is not usually admissible.[102]  Although Rule 608(b) does grant the court discretion to allow inquiry into arrest records on cross-examination *if* they bear on a witness's character for truthfulness or untruthfulness, the Tenth Circuit has ruled the crime underlying the arrest must have a "relation to truth or untruth."[103] Defendant has not argued any arrest record in its possession meets this exception.[104]

To the extent, however, plaintiff moves to exclude evidence of witnesses' prior criminal *convictions*, the motion is **denied**.  Rule 609 indicates evidence of a criminal

---

[101] ECF No. 261 at 21.

[102] *See United States v. Wilson*, 244 F.3d 1208, 1217 (10th Cir. 2001) ("[T]he potential for prejudice is high and past arrests have little probative value because 'arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty.'" (quoting *United States v. Robinson*, 978 F.2d 1554, 1559–60 (10th Cir. 1992))); *United States v. Gossett,* No. 1:19-CR-00081 WJ, 2019 WL 2006414, at *1 (D.N.M. May 7, 2019) ("[I]t appears that Fed. R. Evid. 609 is not a basis to admit impeachment evidence of the arrests, because these are mere arrests and not convictions . . . .").

[103] *Wilson*, 244 F.3d at 1218 ("Rule 608 is relevant only if the conduct relates to truthfulness or untruthfulness, and, while the government was trying to test the veracity of the witness, the drug crimes themselves (the 'conduct' at issue) have no relation to truth or untruth." (internal quotation and citation omitted)).

[104] Nor does defendant suggest any other basis (such as Fed. Rule Evid. 404(b)(2)) under which evidence of a witness's prior arrest is admissible in this case.

40

conviction is admissible to attack "a witness's character for truthfulness" if certain conditions are met.  The court reserves ruling on plaintiff's objection to the admission of conviction evidence until the court knows what specific crimes are involved and how such evidence is offered at trial.

IT IS THEREFORE ORDERED:

1.      Defendant's motion in limine (ECF No. 260) is denied.

2.      Plaintiff's motion in limine (ECF No. 261) is granted in part and denied in part.

Dated December 23, 2020, at Kansas City, Kansas.

 s/ James P. O'Hara 
James P. O'Hara
U.S. Magistrate Judge

O:\Trial\14-2111_Smart v. City of Wichita\-260, 261 MIL order.docx